Patients of Philadelphia State Hospital, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare and Aldo Colautti, Secretary of Welfare, Respondents.

Argued September 10, 1979, before Judges Blatt, DiSalle and MacPhail, sitting as a panel of three.

Reargued June 3, 1980, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge WILKINSON, JR. did not participate.

*Judy Greenwood,* for petitioners.

*John A. Kane,* Assistant Attorney General, for respondents.

OPINION,[1] July 21, 1980:

This case comes before us by way of a petition for review of a refusal by the Department of Public Welfare (DPW) to grant petitioners, who are patients in the Philadelphia State Hospital (Hospital), access to an evaluation of the Hospital compiled by the Joint Commission on Accreditation of Hospitals (JCAH). After initial argument of the case to a panel of this court, we ordered reargument before the court en banc.

Because there were no official proceedings below and the entire record consists of two letters (a request

---

[1] Because the member of the court designated to prepare and sign this opinion for the majority is unable to improve upon the able statement drafted by Judge Richard DiSalle, former member of the court who sat upon the panel consideration of this case, Judge DiSalle's work has been adopted as the majority opinion.

for the report and a denial thereof), we set forth as facts only those matters upon which the briefs of the parties are in agreement.

The Hospital is a state-operated facility providing care to the psychiatrically ill as part of the Commonwealth's mental health service system. It is supported by a combination of federal and state monies. The federal share of the Hospital's expenses consists of monies received pursuant to Title XVIII (Medicare) and Title XIX (Medicaid) of the Social Security Act, 42 U.S.C. §§1395, 1396 et seq. One of the conditions for participation under either program is that a facility must be "accredited" by the JCAH. *See* 42 U.S.C. §1395x(f).

JCAH is a private, non-profit organization which prescribes standards for participation by providers of health services. It conducts annual or biennial evaluations of each participating provider to verify its compliance with the JCAH standards. When a provider is determined not to be in compliance with these standards, accreditation is refused; alternatively, if a provider is currently accredited and is determined to be out of compliance, its accreditation is revoked.

Pursuant to Section 9 of the Act (Law) of May 25, 1921, P.L. 1144, *as amended,* 71 P.S. §1469, DPW licenses institutions, regulates their inspection and approves the adequacy of the hospital wards maintained for the care of the mentally ill. Section 13(1) of the Law, 71 P.S. §1473(1). The Secretary of DPW is affirmatively obligated to annually inspect or cause to be inspected all state institutions subject to his supervision and to report his findings to DPW. Section 12 of the Law, 71 P.S. §1472. The Mental Health Procedures Act (MHPA), Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. §7101 et seq., and the implementing regulations further delineate DPW's responsibilities.

Section 105 of the MHPA, 50 P.S. §7105,[2] requires DPW to approve mental health facilities in keeping with standards which "shall be at least as stringent" as those of JCAH. The implementing regulations actually *mandate* that facilities subject to such approval *meet* JCAH standards. 6 Pa. B. 2117, §7100.1.5.1(A) and 7100.1.5.1(B) (September 4, 1976).[3]

On March 3, 1978, petitioners, by their counsel, requested access to the most recent JCAH evaluation of the Hospital from DPW pursuant to the provisions of the so-called "Right-To-Know Act" (Act), Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §66.1 et seq. The request was rejected on June 2, 1978, on the grounds that the report "does not constitute a public record" under the Act.

Section 1 of the Act, 65 P.S. §66.1 defines "public record" as including "any minute, order or decision by an agency fixing the personal or property rights,

---

[2] Section 105 pertinently provides as follows:
The department's standards for approval shall be at least *as stringent as those of the joint commission for accreditation of hospitals and those of the Federal Government* pursuant to Titles 18 and 19 of the Federal Social Security Act to the extent that the type of facility is one in which those standards are intended to apply. (Footnote omitted.)

[3] These regulations provide as follows:
§7100.1.5.1. Approval.
A. *All facilities providing involuntary treatment or voluntary inpatient treatment and all facilities providing voluntary outpatient treatment,* if such voluntary outpatient treatment is funded in whole or in part by public monies, shall be approved by the Department.
B. Each facility subject to Departmental approval in accordance with paragraph A.1 of this section shall, as of March 1, 1977, meet the standards required for accreditation by the Joint Commission for Accreditation of Hospitals (JCAH) and the standards required for participation in title XVIII and XIX of the Social Security Act to the extent that such standards apply to the facility.

privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of any investigation undertaken by an agency in the performance of its official duties ... or which would operate to the prejudice or impairment of a person's reputation or personal security." Any material so designated a public record is available to any citizen of the Commonwealth for examination and inspection. Section 2 of the Act, 65 P.S. §66.2.

"Undoubtedly, the legislature intended through the medium of [this] statute a clarification of the right of examination and inspection of public records by all citizens, regardless of their interest or the extent or nature thereof. Within the statutory language is embraced all citizens and not simply those citizens who by some courts might be denied the right of examination and inspection because of lack of interest or legitimate purpose." *Wiley v. Woods*, 393 Pa. 341, 349-50, 141 A.2d 844, 849 (1958).

In resolving this controversy we must first determine whether the JCAH report in question is a "public record" within the meaning of the Act. Petitioners argue that the JCAH report is a minute, order or decision of an agency fixing personal or property rights, privileges, immunities, duties or obligations of a person or group. DPW insists that JCAH is not an agency but that it is merely a private, non-profit organization, the services of which are sought by DPW (or by the institutions over which DPW has supervisory authority) only as a pre-condition of receiving federal support funds. The JCAH report, DPW continues, represents the views of JCAH alone and in no way reflects the views of DPW with regard to DPW's separate and unique statutory duty to supervise, inspect and approve state psychiatric institutions.

Although we agree that the JCAH report does not in and of itself constitute a determination of DPW, we nevertheless believe that if the report is shown to be a *basis* for a DPW determination, the report may still constitute a public record. *See Young v. Armstrong School District,* 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975). Such will a fortiori be the case where, as here, the report is not only an essential component of the agency's decision, but, according to DPW's own regulations, a prerequisite to that agency's approval of a facility. As noted previously, Section 105 of the MHPA and, more importantly, the implementing regulations effectively compel DPW to approve state psychiatric institutions only in accordance with the very same minimum standards promulgated and utilized by JCAH in preparing its evaluation reports. Even assuming that the JCAH report is requested by DPW and by state psychiatric institutions only to insure the flow of federal supporting funds, the fact nevertheless remains that if JCAH finds conditions in a state institution which are in violation of *its* minimum standards, DPW may not approve that institution. Hence, whether a JCAH report is compiled in fulfillment of DPW's statutory obligation to supervise, annually inspect and approve state psychiatric institutions, or simply to secure federal funding, DPW's decision to approve state psychiatric institutions is directly dependent upon a satisfactory report by JCAH. We believe that the JCAH report of necessity constitutes an essential component of DPW's decision to approve a state psychiatric institution and is, therefore, "a decision by an agency" within the meaning of the Act. *See Young, supra.*

We must now determine whether this "decision" is one "fixing the personal or property rights, privileges, immunities, duties or obligations" of a person or group of persons. We note initially that the term "fixing" has

been equated with the term "affecting." *Lamolinara v. Barger*, 30 Pa. Commonwealth Ct. 307, 311, 373 A.2d 788, 790 (1977). Hence, decisions which "affect" personal or property rights, etc., are "public records" within the meaning of the Act. In the Commonwealth of Pennsylvania, state institutions like the Hospital have an affirmative obligation to maintain conditions which "meet" JCAH standards. Similarly, patients of psychiatric hospitals, such as the Hospital here, have a statutory right to receive adequate health care. *See* Section 104 of the MHPA, 50 P.S. §7104. As noted previously, Section 105 of the MHPA and the implementing regulations oblige DPW to approve treatment facilities and to insure compliance with JCAH standards. Hence, if the JCAH report "affects" the Hospital's obligation to conform to JCAH standards or the right of patients of the Hospital to receive adequate health care, citizens of the Commonwealth have a right to examine the report under the Act.

When one considers the nature of JCAH reports and the fact that the JCAH report in controversy here recommended revocation of the Hospital's accreditation, there can be no doubt that the obligation of the Hospital and the right of the patients would be affected by implementation of the JCAH report. DPW refers to an exchange of correspondence between DPW and JCAH revealing a concern with such matters as the use of fireproof or fire-resistant materials in construction, use of automatic fire extinguishing equipment, hospital ventilation and hygiene. That the Hospital's obligation to provide, and the patients' right to receive, adequate health care are affected by a report which may indicate that a treatment facility does not conform to minimum standards of fire protection or hygiene is too obvious to belabor. We hold, therefore, that the JCAH report to which petitioners have requested access is a "public record" within the meaning of the Act.

DPW contends that even if the report is a public record, it nevertheless falls within the statutory proviso as one which would not only reveal the institution, progress or result of an investigation undertaken by it (*i.e.*, the agency itself), but would also operate to prejudice or impair the personal reputation or security of the Hospital staff. In our view, the requested report is not of the sort envisaged by the field investigation exception of the Act. The JCAH report is clearly a basis for DPW's decision to approve a state psychiatric hospital. The report is not an independent investigation, "the discovery of which would compromise the performance of an official agency *unrelated* to the particular interest which has rendered the requested minute, order or decision a public record in the first place," as President Judge Bowman noted in *Marvel v. Dalrymple*, 38 Pa. Commonwealth Ct. 67, 75-76, 393 A.2d 494, 498 (1978) (emphasis supplied). *See also Wiley v. Woods, supra* at 352, 141 A.2d at 850.

We similarly find unpersuasive DPW's contention that disclosure of the JCAH report would prejudice or impair the reputations or security of members of the Hospital staff. DPW suggests in its brief that the JCAH report necessarily reflects adversely on the reputation of the staff and might thereby subject staff members to professional harm. So far as can be ascertained, the JCAH report itself makes no reference to specific individuals and is not intrinsically harmful to the persons or reputations of the Hospital staff. The exception contained in the Act embraces disclosure of reports which "would" prejudice or impair the reputations or security of persons. *See Young, supra; See also Moak v. Philadelphia Newspapers, Inc.*, 18 Pa. Commonwealth Ct. 599, 336 A.2d 920 (1975) and *Friedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973). The highly problematical and tangential harm which might be visited upon Hospital staff

members is simply not of the sort comtemplated by the Act.

We hold that petitioners are entitled to inspect the contents of the report of the Joint Commission on Accreditation of Hospitals received by the Philadelphia State Hospital on or about April 22, 1978.

### ORDER

Now, this 21st day of July, 1980, it is hereby ordered that the Department of Public Welfare make available to the Petitioners, for the purpose of examination and the taking of extracts or making of copies, the report of the Joint Commission on Accreditation of Hospitals received by the Philadelphia State Hospital on or about April 22, 1978, at such time and in such manner as the Department of Public Welfare normally prescribes with regard to all other public records.

Judge MENCER dissents.

Judge WILLIAMS, JR. concurs in result only.

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

"Public record" is defined in pertinent part in Section 1 of the Act of June 21, 1957, P.L. §390, *as amended*, 65 P.S. §66.1, as follows: "Any account, voucher or contract dealing with the receipt or disbursement of funds *by an agency* or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision *by an agency* fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons...." (Emphasis added.)

Apparently, the majority concedes that the JCAH evaluation is not an "account, voucher or contract" nor is it a "minute, order or decision." However, using *Young v. Armstrong School District*, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975) as its authority, the majority concludes that since the JCAH evaluation was the basis for DPW's decision to approve a state psychiatric institution, it (the evaluation) is a public record subject to disclosure. The majority holds out the JCAH evaluation as a pre-condition for approval of a psychiatric hospital by virtue of regulations adopted by DPW. See footnote 3 of the majority opinion. This is the fatal flaw in the reasoning of the majority.

The JCAH evaluation is compelled by the provisions of Federal law to assure that DPW receives funding under Title XVIII (Medicare) and Title XIX (Medicaid) of the Social Security Act. See 42 U.S.C. 1395x(f). It is done for no other purpose. Of course, the DPW regulations must state that each facility shall meet JCAH standards. The purpose of the regulation, however, is *solely to assure that federal funding continues*. It is not the basis for any decision by DPW.

Moreover, the JCAH evaluation is not an account, voucher or contract, nor is it a minute, order or decision *of the agency*. In *Young* and the cased cited therein, the information sought to be discovered was compiled by the agency involved. The JCAH report is done by people not in any way associated with the DPW.

It seems to me we err when we say first that if something is the basis for a decision it is a public record even though it is not an account, voucher, contract, minute, order or decision (which are words of art) and then go further to say that whether or not the agency is responsible for the thing sought to be seen, it is still a public record. I am of the opinion that the

JCAH report is not a public record under the plain language of the statute[1] and, accordingly, is not subject to public inspection.

---

[1] "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(b).