Pennsylvania Association for Children and Adults With Learning Disabilities, Janet Stotland and Leonard Rieser, Petitioners v. Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued January 31, 1985, before Judges MAC-PHAIL, BARRY and PALLADINO, sitting as a panel of three.

532

*Leonard Rieser*, with him, *Dennis Luttenauer*, for petitioners.

*Kathleen F. McGrath*, Deputy Attorney General, with her, *Allen C. Warshaw*, Senior Deputy Attorney General, and *LeRoy S. Zimmerman*, Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, September 10, 1985:

This case is before us pursuant to a petition for review of a refusal by the Department of Education (Department) to grant the Pennsylvania Association for Children and Adults with Learning Disabilities, Janet Stotland and Leonard Rieser (Petitioners), access to certain documents pertaining to special education programs for "exceptional children."[1]

Because there were no official proceedings below and the entire record consists of correspondence in the form of letters between the parties, we set forth as facts only those matters upon which the briefs of the parties are essentially in agreement.

The Commonwealth, through both statutes and regulations, has specially provided for the education

---

[1] "Exceptional children" are defined as "children of school age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special educational facilities or services." Section 1371(1) of the Public School Code, 24 P.S. §13-1371(1).

of "exceptional children" by intermediate units and school districts. Section 1372(2) of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1372(2), requires that the Department ensure that intermediate units and school districts adopt and implement plans for the proper education and training of all exceptional children within the Commonwealth. These plans must be submitted to the Department for approval. *Id.* Special classes must then be provided and maintained in accordance with an approved plan. Section 1372(3) of the Public School Code, 24 P.S. §1372(3).

The Department has promulgated implementing regulations which reiterate the obligation of local school districts and intermediate units to prepare plans which provide for the education of exceptional children. 22 Pa. Code §13.6. All special education programs, whether operated by an intermediate unit or a school district,[2] are to be incorporated into an intermediate unit plan which shall be submitted to the Department for its approval. *Id.*; 22 Pa. Code §341.35(a). The Department shall approve those plans the format and contents of which satisfy the criteria established by the Department. 22 Pa. Code §341.35 (a). Those plans which do not meet these criteria will be disapproved. 22 Pa. Code §341.35(c). Prior to disapproval, however, personnel from the Division of Special Education shall discuss the plan and suggest modifications with the appropriate intermediate unit or school district. *Id.* If a plan is ultimately dis-

---

[2] The school districts which comprise the intermediate unit devise plans to accommodate generally the exceptional children within each district. The intermediate unit then establishes special programs for those exceptional children for whom the local school districts cannot efficiently and effectively provide.

approved, the IU shall be entitled to an administrative hearing. 22 Pa. Code §341.35(d). Department approval of a special education plan is a condition precedent to the right to receive funding from the Commonwealth for the costs of providing special education. Sections 1373 and 2509 of the Public School Code, 24 P.S. §§13-1373 and 25-2509; 22 Pa. Code §341.71.

In addition to the criteria established by the Department for the approval of special education plans, the Department's regulations further provide that if the percentage of persons from any racial or ethnic group assigned to special education programs is significantly disproportionate to the distribution of that group in the school district or intermediate unit, the school district or intermediate unit must, to maintain the assignments, adduce evidence that the assignments are justified and that the disproportion is necessary to promote a compelling education interest of the persons affected. 22 Pa. Code §13.2(c).

The Commonwealth's policy of ensuring all handicapped children the right to a free appropriate education, as well as its plan requiring school districts and intermediate units to submit their special education plans to the Department for approval enables these agencies to qualify for federal assistance under the Education for All Handicapped Children Act, 20 U.S.C. §§1411-1420. See 20 U.S.C. §1414. Moreover, the Commonwealth's goal and procedure whereby school districts and intermediate units may not discriminate against members of minority groups in the operation of their special education programs is further assurance of qualification under the Handicapped Children Act. See 34 C.F.R. §§100.1 and 100.6.

Petitioners in the instant case are involved in activities to ensure that learning disabled and other handicapped children in Pennsylvania receive ap-

propriate educational services. Pursuant to the so-called "Right to Know Act" (Act), Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§66.1-66.4, Petitioners, on January 4, 1984, requested access to certain documents pertaining to special education plans submitted by intermediate units and school districts. Those documents Petitioners requested access to were: (1) Each special education plan, whether that of an intermediate unit or school district, which provides for the operation of mixed-category classes (those classes in which more than one type of exceptional child is taught); (2) any documents related to plans or plan amendments submitted by either an intermediate unit or a school district to the Department seeking approval for the operation of mixed category classes and any documentation prepared by the Department granting or denying such approval; (3) any criteria used by the Department in determining whether to approve requests to operate mixed-category classes: (4) evaluations (including self-evaluations) of mixed-category classes, whether prepared by the Department, an intermediate unit or school district; and (5) the most recent available statistical data concerning the racial composition, by school district, of programs for exceptional children. The Department agreed to provide Petitioners access to the information in categories (1), (3) and (4).[3] With respect to category (2), the Department agreed to provide Petitioners with all documents pertaining to plan amend-

---

[3] Regarding category (4) which included evaluations of mixed-category classes, the Department initially agreed to provide access to evaluations completed by the Department itself, but deferred making a decision on whether to permit access to evaluations completed by the school district or intermediate unit. In its brief to this Court, the Department has agreed to provide Petitioners with *all* evaluations relative to mixed-category classes.

ments providing for mixed-category classes which have already been approved by the Department. However, the Department refused to permit access to those plans and plan amendments which are pending approval by the Department. The Department also refused Petitioners access to the statistical data concerning the racial and ethnic composition of programs for exceptional children.

Section 2 of the Act, 65 P.S. §66.2, provides that "[e]very public record of an agency shall at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." Section 1 of the Act, 65 P.S. §66.1(2) defines a "public record" in pertinent part as follows:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or property and *any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons:* Provided, that the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of any investigation undertaken by an agency in the performance of its official duties. . . . (Emphasis added.)

Inasmuch as it is apparent that the documents sought here do not constitute an "account, voucher or contract", our focus is on that portion of the definition emphasized above which reads: "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons." This

language is to be read as including, but not limited to, "decisions which establish, alter, abolish, or deny rights, privileges, immunities, duties or obligations." *Lamolinara v. Barger*, 30 Pa. Commonwealth Ct. 307, 311, 373 A.2d 788, 790 (1977).

Petitioners argue that although the requested documents do not in and of themselves represent determinations by the Department, they nonetheless constitute public records under the Act because they will be the basis for Department decisions affecting substantive rights. The Department counters by insisting that the requested documents are related to decisions pending before the Department and therefore do not constitute public records. The Department further asserts that the requested documents fall within the "investigation" exception to disclosure of public records.

In asserting their right to examine the requested documents, Petitioners rely principally on the inclusive concept of "public record" applied by this Court in *Young v. Armstrong School District*, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975), and *Patients of Philadelphia State Hospital v. Commonwealth*, 53 Pa. Commonwealth Ct. 126, 417 A.2d 805 (1980). In *Young*, the complainant sought access to a school district's list of kindergarten pupils in order to contact their parents after the school district proposed changes in the kindergarten schedule. The school district refused complainant's request arguing first, that the list was not a public record and second, if the list was a public record, access is barred because the list might prejudice or impair the personal security of the students or their parents.[4] In determining that

---

[4] Another exception to the definition of "public record" prohibits access to records "which would operate to the prejudice or impairment of a person's reputation or personal security." 65 P.S. §66.1 (2).

the list did constitute a public record within the definition of the Act, this Court reasoned that the list is:

> the sort of record which would *provide a basis for determining* the location of the school to which the child will attend, the room to which the child will be assigned, the particular sessions to which the child will be assigned, and the transportation which the child will need. (Emphasis added.)

In support of its holding, the Court in *Young* cited both *McMullan v. Secretary of Welfare,* 3 Pa. Commonwealth Ct. 574, 284 A.2d 334 (1971), rev'd on other grounds sub. nom., *McMullan v. Wohlgemuth,* 453 Pa. 147, 308 A.2d 888 (1973), and *Friedman v. Fumo,* 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973). In *McMullan,* this Court granted access to the names and addresses of public assistance recipients in the County of Philadelphia as well as the amount of assistance received. On appeal, our Supreme Court reversed, holding that the Public Welfare Code barred access to this information.[5] However, the Court did find that the definition of "public record" under the Act appeared "broad enough to encompass" the information sought. In *Friedman,* it was held that the list of persons who had taken the Department of State's examination for qualification as a certified public accountant constituted a public record. The Court saw no distinction between the records of names of welfare recipients and lists of persons who have taken accountancy examinations.

Consistent with the reasoning in *Young,* this Court in *Patients of Philadelphia State Hospital,* ordered

---

[5] Records to which access is unavailable because of "statute law or order or decree of court" are also excepted from the definition of "public record" under the Act. 65 P.S. §66.1(2).

the Department of Public Welfare (DPW) to make available an evaluation of a State psychiatric institution compiled by the Joint Commission for Accreditation of Hospitals which prescribes standards for providers participating in Title XVIII (Medicare) and Title XIX (Medicaid) of the Social Security Act, 42 U.S.C. §§1395-1395xx and 42 U.S.C. §§1396-1396p. The Court determined that although this evaluation does not in and of itself represent a decision by DPW, it "constitutes an essential component of DPW's decision to approve a state psychiatric institution and is, therefore, 'a decision by an agency' within the meaning of the Act." *Id.* at 132, 417 A.2d at 808.

Petitioners argue that because special education plans, plan amendments and documents related thereto will form the basis of a Department decision approving or disapproving said plans and approval is a prerequisite to receiving state reimbursement and assistance from the federal government, this information constitutes a "public record" under the inclusive interpretation given that term in *Young* and *Patients of Philadelphia State Hospital.* Likewise, Petitioners assert that the statistical data concerning the racial composition of special education programs will constitute the basis for Department decisions on whether racial or ethnic disparities exist in these programs. And in addition to the intrinsic value of eliminating any such disparities, Department decisions in this regard assure continued participation in the federal handicapped children program.

The Department, on the other hand, argues that even the expansive interpretation given the definition of "public record" in *Young* and *Patients of Philadelphia State Hospital* does not compel that Petitioners be granted access to the documents at issue in the instant case. The Department argues that public access

need be provided only to documents related to decisions which have already been made by an agency and not to pending decisions.

In support of its argument, the Department cites *West Shore School District v. Homick,* 23 Pa. Commonwealth Ct. 615, 353 A.2d 93 (1976). In this case, the school board refused Homick, a teacher, permission to inspect his personnel records which contained ratings and anecdotal records. In upholding the school board's refusal, this Court first concluded that the contents of a teacher's personnel file do not constitute a minute, order or decision of the board. The Court further concluded that the information did not fix any rights, privileges, immunities, duties or obligations of the teacher. While noting that Homick's only concern was that the contents of his personnel file may have relevance in a future proceeding or decision of the Board which may affect his rights, the Court stated that: "the words in the definition of a public record under consideration are used in the present tense and not in the speculativeness of the future." *Id.* at 619, 353 A.2d at 95. The Department then distinguishes this Court's decision in *Homick* from its later decision in *Lamolinara v. Barger* wherein a *discharged* employee's personnel file was held to be a public record.

In addition, the Department distinguishes the instant case from *Young* by arguing that in the latter case, the list of enrolled kindergarten pupils, while perhaps forming the basis for future determinations by the district, was nonetheless an official list the contents of which had already been determined. The Department asserts that in the instant case, rather than forming the basis of a Department decision, the documents Petitioners are seeking will themselves be the *subject* of a Department determination.

We agree with the Department that those special education plans, plan amendments and related documents, with respect to which a Department determination has yet to be made do not represent "public record[s]" under the Act. Clearly, these documents do not constitute a minute, order or decision of the Department. Said dcouments are merely proposals which are awaiting a determination by the Department, *i.e.* approval or disapproval. For the same reason, these documents do not "fix" any rights, privileges, immunities, duties or obligations. Unlike the situation in both *Young* and *Patients of Philadelphia State Hospital,* the documents herein are neither reports nor lists the contents of which have already been determined and which will or have already formed the basis for an agency decision. Rather, the documents at issue here are proposals which will be the *subject* of an agency decision. And until such time as that decision is made, the documents do not constitute "public record[s]" under the Act.

With respect to the statistical data on the racial and ethnic composition of programs for exceptional children, we can discern no significant difference between the information here sought and that obtained in *Young* and the cases cited therein. This data represents information compiled by the Department pursuant to its obligations under its regulations, *See* 22 Pa. Code §13.2(c), and thus represents a decision of the Department. Clearly this information will affect the substantive rights of those exceptional children who are members of identifiable racial or ethnic groups. We hold, therefore, that the Department's statistical data on the racial and ethnic composition of special education programs to which Petitioners have requested access is a "public record" under the Act.

The Department contends that even if this data is a public record, it nevertheless falls within the statutory proviso excepting from that term reports the publication of which would reveal the institution, progress or result of an investigation taken by it (*i.e.,* the agency itself). However, we are of the view that the requested data does not fall within the investigation exception of the Act. This data is not an independent investigation, "the discovery of which would compromise the performance of an official agency *unrelated* to the particular interest which has rendered the requested minute, order or decision a public record in the first place." *Marvel v. Dalrymple,* 38 Pa. Commonwealth Ct. 67, 75-76, 393 A.2d 494, 498 (1978) (emphasis supplied). *See also Wiley v. Woods,* 393 Pa. 341, 141 A.2d 844 (1958).

Accordingly, we hold: (1) that Petitioners are not entitled to inspect the contents of those plans, plan amendments and related documents providing for the operation of mixed-category special education classes which are pending approval by the Department; and (2) that Petitioners are entitled to inspect the Department's statistical data on the racial and ethnic composition of special education programs in the Commonwealth.

## Order

And Now September 10, 1985, the Department of Education decision denying Petitioners access to the proposed special education plans, plan amendments and related documents pending approval by the Department is affirmed. The Department's decision refusing Petitioners access to the statistical data concerning the racial and ethnic composition of special education programs for exceptional children is reversed and the Department is ordered to make this information available to Petitioners for the purpose of

examination and taking of extracts or making of copies.

Judge WILLIAMS, JR., did not participate in the decision in this case.