**Times Publishing Co. Inc. v. Michel**

*Craig A. Markham,* for plaintiffs.
*Thomas E. Kuhn,* for defendant.
*Charles L. Holsworth,* for intervenor.

LEVIN, *J.,* June 22, 1992—Before this court is a statutory appeal by plaintiffs pursuant to 65 P.S. §66.4. Plaintiffs appeal from the denial of the right to view,

inspect and copy certain records maintained by defendant. As the parties have agreed to a stipulated set of facts which this court hereby adopts and incorporates by reference (attached as Exhibit A), plaintiffs have moved for summary judgment. Even without the motion for summary, the matter is ripe for disposition as there are no facts in dispute and only the interpretation of the applicable law remains at issue.

This matter arose when plaintiffs requested access to all written applications pertaining to active, valid licenses to carry a firearm possessed by defendant. Plaintiffs have not requested access to applications which did not result in a valid license.

Pursuant to the Pennsylvania Uniform Firearms Act (18 Pa.C.S. §6101 et seq.), it is a misdemeanor for a person, not excepted by statute, to carry a firearm on his person or in any vehicle without a license. See 18 Pa.C.S §§6106, 6119. Under the aforesaid Act, the defendant, as sheriff of Erie County, is charged with receiving, reviewing and acting upon all applications for such licenses. See 18 Pa.C.S §6109. Defendant currently maintains on file written applications pertaining to all valid licenses to carry a firearm issued during his tenure. Such a license is valid for a five-year term, after which a new application must be filled out and a new investigation instituted by defendant.

The actual application for a license to carry a firearm is a form prescribed by the Pennsylvania State Police under 18 Pa.C.S §6109(c). An applicant must provide information regarding his identity, residence, employment, Social Security number and reason for need to carry a firearm. The application also has a series of

15 additional questions. See 18 Pa.C.S §6109(e)(1). An affirmative response to any one of these questions would render an applicant per se ineligible for a license. The completed application is submitted to the sheriff for his review. Thereafter, the sheriff is to conduct an investigation to determine the applicant's qualifications for the license. See 18 Pa.C.S §6109(d). Upon completion of his investigation, the sheriff is to issue a license to an applicant for "whom no good cause exists to deny a license." 18 Pa.C.S §6109(e).

Upon plaintiffs' request for access to all applications on file, defendant sheriff denied the request. Plaintiffs have filed a statutory appeal from the defendant sheriff's denial and a concomitant motion for summary judgment and/or alternative disposition of the case.

On June 8, 1992, prior to oral argument on the motion for summary judgment, this court granted Donald Walter Schick's petition to intervene. Intervener Schick has a direct interest in the action as the holder of a valid, active license to carry a firearm in Erie County.

As a general rule, this court is most reluctant to grant summary judgment. It is necessary that there be no question of relevant fact. As stated in *Garcia v. Savage,* 402 Pa. Super 324, 586 A.2d 1375, 1376 (1991), the standard for summary judgment is exacting.

"Summary judgment may properly be entered only if 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Pa.R.C.P. 1035(b). The moving party has the burden of persuading the court

that no genuine issues exist as to the material facts. Summary judgment may be entered only where the case is free from doubt. In passing upon a motion for summary judgment, moreover, a court must examine the record in the light most favorable to the non-moving party. Any doubt must be resolved against the moving party." *Id.*, 586 A.2d at 1377. (citations omitted)

In that there are no material issues of fact in dispute, the matter would be ripe for summary judgment. The court notes, however, that even without the motion for summary judgment, this matter is ready for disposition. The facts have been stipulated and only a question of law remains.

The legal query in this case involves an interpretation of the Pennsylvania Right to Know Act (65 P.S. §66.1 et seq.), as it pertains to applications for licenses to carry firearms concealed on or about the person or in a vehicle within the Commonwealth of Pennsylvania. The Right to Know Act directs that "every public record of a governmental agency or body shall, at all reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. §66.1(2). Public records have been construed to include not only the agency's decision but also these records "shown to be a basis for [an agency's] determination." *Pastore v. Commonwealth Insurance Department,* 125 Pa. Commw. 611, 558 A.2d 909 (1989). See also *Lamolinara v. Barger,* 30 Pa. Commw. 307, 373 A.2d 788 (1979); *Young v. Armstrong School District,* 21 Pa. Commw. 203, 344 A.2d 738 (1975); *Patients of Philadelphia v. Commonwealth Department of Public Welfare,* 53 Pa. Commw. 126, 417 A.2d 805 (1980); *Pennsylvania Association for Children and Adults v.*

*Commonwealth Department of Education,* 91 Pa. Commw. 531, 498 A.2d 16 (1985).

The parties have agreed by stipulation that the defendant, as duly elected sheriff of Erie County, is a governmental agency as defined by 65 P.S. §66.1 et seq. The license applications at first glance would fall under the statutory definition of public records. At issue herein is whether the license applications in question fall within the enumerated exceptions to the general rule that all public records are subject to disclosure.

The Right to Know Act specifically excludes from the definition of public record subject to disclosure four types of material records involved in an investigation; records to which access is unavailable due to statute, law or order or decree of court; records which would operate to the prejudice or impairment of a person's reputation or personal security; and records which would cause the loss to the Commonwealth or any of its subdivisions of federal funds. 65 P.S. §66.1(2). Any document falling squarely within one or more of these exceptions is protected from public disclosure.

Defendant asserts that the applications in question are protected from public disclosure under two of the enumerated exceptions. Defendant bears the burden of proof as to these assertions. First, defendant asserts that disclosure of the applications in question would compromise his "investigation" and that, thus, they fall within the investigatory category of records excepted and excluded from the definition of public records.

The sheriff is obligated to comply with 18 Pa.C.S §6109(d) which directs him to investigate various aspects of an applicant's character including his criminal history, character and reputation, as well as his mental stability and substance use. Defendant argues that to make these applications public would hamper his investigation by potentially inhibiting an applicant's candor and chilling their truthfulness. In essence, defendant argues that the answers on the application are part of the investigative process employed to discover whether the applicant is qualified.

The exception to the act for investigatory documents does not apply to the applications requested here. The public policy concern behind this exception is to protect the confidentiality necessary for an agency to conduct effective investigation. Plaintiff herein is requesting access to these applications only *after* a license has been granted, not before. Further, plaintiff is requesting access to only the applications, not any additional fruits of the sheriff's investigation. Therefore, as a license would necessarily issue before the plaintiff's requested access the investigatory phase would be over by the time plaintiff viewed the documents. Further, the applications were not *generated* by an investigation or agency action. Citizens, of their own accord, choose to make application for such licenses. The applications are a basis for the decision to grant or deny a license, not an independent investigation undertaken by the sheriff's office. See 65 P.S. §66.1(2) requiring such an investigation be "undertaken by the agency."

This interpretation of the investigatory exception is consistent with Pennsylvania case law. In *Marvel v. Dalrymple,* 38 Pa. Commw. 67, 393 A.2d 494 (1978),

the court held that examination papers of officers who took tests for promotions are not investigatory documents. The court concluded that as this information was gathered in order to permit the agency to make a decision, then that becomes a public record as opposed to an investigative document. Similarly in *Patients, supra,* patients of a state hospital requested access to a written evaluation report of the hospital. The court held that the report was "not of the sort envisaged" by the investigatory exception of the Right to Know Act. The court reasoned that the report was the basis for a decision and not an independent investigation, therefore, it was subject to disclosure. *Id.,* 417 A.2d at 809. See also *Anders v. Commonwealth, Dept. of Treasury,* 137 Pa. Commw. 111, 585 A.2d 568 (1991), holding lists of unclaimed and uncashed checks not to be gathered through investigative activity. Accordingly, as the applications herein at issue are the basis for a decision and not an independent investigation, they do not fall within the investigatory exception to the Right to Know Law.

Defendant further asserts that the applications are protected by the statutory exception excluding from disclosure public records "which would operate to the prejudice or impairment of a person's reputation or personal security...." 65 P.S. §66.1(2). Defendant asserts that as the application requires a citizen to provide his name, address, phone number, Social Security number, reason for requesting a license, mental health history, criminal history and substance abuse history, disclosure of this information would be harmful to his reputation. Defendant additionally asserts that an applicant's personal security would be compromised

by disclosure, as criminals would have access to lists of homes containing weapons.

The court is mindful that the statute's reference to personal security and reputation does not extend to personal privacy interests.

"Considerations of privacy and confidentiality, as distinguished from regard for reputation and personal security must yield to the public's right to know about and examine into its servant's performance of duty." *Kanzelmeyer v. Eger,* 16 Pa. Commw. 495, 329 A.2d 307 (1974). See also *Young v. Armstrong School District,* 21 Pa. Commw. 203, 344 A.2d 738 (1978).

Therefore, any concerns regarding privacy alone are insufficient to deny access to documents covered by the Right to Know Law.

The courts of Pennsylvania have interpreted this exception to apply only to those records which are *intrinsically harmful* to the reputation and/or security interests. Documents which are facially benign but contain a potential harm if misused, do not fit within the exception. See *Moak v. Philadelphia Newspapers,* 18 Pa. Commw. 599, 336 A.2d 920 (1975), wherein the court held that payroll records of police officers containing personal data were not intrinsically harmful in and of themselves and thus did not fit within the exception. In *Friedman v. Fumo,* 9 Pa. Commw. 609, 309 A.2d 75 (1973), the court ordered disclosure of lists of persons taking the state CPA exam. Similarly, in *Young, supra,* the court ordered disclosure of the names and addresses of children enrolled in kindergarten. In response to a personal security argument, the court held that in order for records to fall within

the personal security exception, they must be *intrinsically harmful,* and not merely capable of being used for a harmful purpose. See also *Patients, supra,* and *Mergenthaler v. Commonwealth, State Employees Retirement Board,* 33 Pa. Commw. 237, 372 A.2d 944 (1978), granting disclosure of retired state employees' names and addresses.

The court's inquiry, however, does not stop here. As this is a case of first impression, the court has had to approach this as a balancing test, weighing the public's right to know against individual and societal security to ascertain whether this information is intrinsically harmful. In applying a balancing test, the court is not utilizing an innovative technique. On a daily basis a court is called upon to balance the rights of both individuals and those of society. Such balancing techniques are an integral part of our system of jurisprudence.

In applying this balancing test in assessing whether disclosure of the license applications in question is "intrinsically harmful," the court must divide the information contained therein into several groups. First, questions 11 through 25 on the application are queries regarding the applicant's character, criminal convictions, mental health, substance abuse and citizenship. An incorrect answer to any of these questions automatically disqualifies an applicant for a license under the statute.[1] See 18 Pa.C.S §6109(e)(1). Therefore,

---

1. The court has reservations as to whether disclosure of a full pardon under question 10 or a dishonorable military discharge under question 24 would per se disqualify a party for a license to carry a weapon.

if an applicant has a problem such as those referred to which could damage a reputation, it would never be disclosed to the "public," because a license would never issue, and plaintiff has requested access to only those applications relating to valid issued licenses. The only parties whose names would be released would be those to whom no harm to reputation could adhere from these questions as they would qualify for a license. The disclosure of answers to questions 11 through 25, therefore, is not intrinsically harmful and does not fit within the relevant exception. Thus, the balancing test, as to these limited questions, weighs heavily in favor of disclosure.

The second category of information contained on the applications is personal data including name, race, references and reason for requesting a permit. In balancing the right to know versus the security interests, the court perceives that the release of the name, race, reason for requesting a permit and references are not intrinsically harmful and must be disclosed. No reason has been propounded to convince the court otherwise.

In analyzing the remaining contents of the application under the aforementioned balancing test, however, the court reaches a different conclusion. Admittedly, at first blush, the release of these individual pieces of information does not appear intrinsically harmful. After review, however, the court concludes that the release of addresses, phone numbers and Social Security numbers creates an intrinsic harm to both individuals and to society as a whole.

First of all, there is merit to defendant's argument that publishing/releasing the addresses and phone num-

bers of gun permit licensees gives criminals a precise listing of where to steal weaponry. The public's right to know is adequately served by the disclosure of the license holder's name without a corresponding address and phone number. Further, an individual's very life could be placed at risk. Take for example, a party in hiding from an abusive spouse or ex-spouse. Such a party has a legitimate reason to apply for a permit to carry a gun. To disclose such a person's name, reason and prior history poses no harm. To disclose an address and/or could sign a death warrant. The court could not bear this on its conscience. Such disclosure is intrinsically harmful.

Disclosure of an individual's Social Security number would be an indiscriminate disclosure, again intrinsically harmful. A Social Security number is a private form of identification used by the government to identify tax-paying citizens, but its use has gone beyond this scope. Social Security numbers are often used as an individual's access to medical insurance coverage; they are often used as access to bank accounts or automatic teller cards, and they often provide access to numerous forms of personal records such as credit histories. To disclose Social Security numbers for press coverage goes beyond a potential harm to a flirtation with disaster. To release such information would also fail to serve any societal purpose. Again, the public's right to know, when weighed against this security threat, falls short. Social Security numbers fall within the security exception and will not be disclosed.

The court is aware that in not releasing addresses, phone numbers and Social Security numbers, it has not fully eradicated the harm from this situation. There

are still various legal avenues by which the determined wrongdoer could acquire this undisclosed data. However, it would take a determination and sophistication not present in the average malcontent. In contrast, however, it would take zero sophistication for such an individual to read this data in the newspaper. Nothing can cure all ills, but the court has taken these measures in an attempt to cure the more obvious harms. The court, in ruling this way, is particularly concerned with the integrity of the law enforcement community. Police officers, parole officers, probation officers, district attorneys and even the judiciary have occasion to make application and be granted carry permits. By the inherent nature of their positions, their own safety and that of their loved ones would be compromised by the disclosure of their addresses and phone numbers (phone numbers can be used to access addresses through criss-cross directories). The court can anticipate that such widespread disclosure could not only negatively affect the morale of the law enforcement community, but could chill applications of persons wishing to serve in those positions.

By way of summary, after applying the aforementioned balancing test, the court finds that the disclosure of addresses, phone numbers and Social Security numbers would be intrinsically harmful to both society and the individual. The court finds that these particular pieces of information fit within the exception to disclosure as operating to prejudice or impair a person's reputation or personal security.[2]

---

2. The court has researched, and the parties have agreed on the record that liquor licenses, voter registration and marriage licenses

Defendant has relied heavily on the New Jersey case of *Southern New Jersey Newspapers Inc. v. Township of Mount Laurel,* No. BUR-L-381-90, wherein the court denied plaintiff newspaper access to files on gun permit applications. Although this court is not bound by this decision, and the statute therein in question is very different, this court does empathize with that court's concerns regarding compromising the police system. Further than that, however, the court does not find the case enlightening or binding.

Plaintiffs have requested that this court grant access to the applications retroactively. These licenses are valid for five years, and plaintiffs request access to all applications on file. It would be grossly unfair of the court to require of the existing license holders the same as it will of prospective licensees. A party entering the courthouse to make application for a license after this opinion and order will have full notice that the bulk of the information contained therein could be made public. Such a person would in theory, by applying, be giving informed consent to disclosure. Existing license holders have had no such notice and can give no consent.

Nevertheless, to disclose all of this personal information retroactively would be a gross miscarriage of justice. When the time comes for the parties holding current licenses to renew their permits in five years,

---

containing similar information are available for full disclosure to the public. Liquor licenses, however, relate to operating a public business where a carry permit is private in nature. Voter registration is available, but how an individual votes is not disclosed. Marriage licenses do not involve anything as volatile as the carrying of a gun and are comparably innocuous.

they can make an informed choice. Therefore, as the public right to know must again be weighed against the license holder's interest, the court concludes that *only the names* of existing license holders can be disclosed. No additional information need be released. In making this determination, the court is mindful of the ever applicable mandate:

"Retroactivity, even where permissible, is not favored, except upon the clearest mandate." Rutledge, Wiley, in *Claridge Apartments Co. v. Commr.* 323 U.S. 141, 164 (1944).

As this court is certain that this decision will be appealed, the court will immediately stay the enforcement of this order for 20 days to permit the filing of an appeal.

## ORDER

And now, June 22, 1992, it is hereby ordered, adjudged and decreed that the defendant sheriff of Erie County shall:

(1) On applications for gun-carry permits from the date of this order, disclose all of the contents thereof only after a valid license is granted, with the exception of the party's address, telephone number and Social Security number. These three pieces of information are not to be disclosed.

(2) Regarding all applications relating to valid existing licenses which predate this order, disclose only the license holder's name.

This court further grants a stay of the enforcement of this order for 20 days, allowing the parties time to file the necessary appeals. However the prothonotary

of Erie County is hereby ordered to enter this judgment as a final order of court.

## STIPULATION OF FACTS

And now, the plaintiffs, Times Publishing Co. Inc. and William McKinney, and the defendant Robert N. Michel, sheriff of Erie County, Pennsylvania, by and through their respective counsel, do hereby enter into and agree to the following stipulation of facts:

(1) Plaintiff William McKinney is a citizen of the Commonwealth of Pennsylvania as that term is used in 66 P.S. §66.1 et seq.

(2) Plaintiff Times Publishing Co. Inc. is a corporation incorporated under the laws of Pennsylvania and having its principal office at 205 West 12th Street, Erie, Pennsylvania, 16501.

(3) Defendant Robert N. Michel is the duly elected sheriff of Erie County, Pennsylvania and, as such, is an agency as the term "agency" is defined and used in 65 P.S. §66.1 et seq.

(4) As part of the official duties and responsibilities of his elected office, the sheriff receives and processes written applications from those residents of Erie County, Pennsylvania, who request to obtain a license to carry a firearm concealed on or about their person or in a vehicle.

(5) The procedure for application for such a license, the form of the application and the content thereof, and the duties of the sheriff with regard to the investigation of the applicant and the issuance or denial of the license are set forth at 18 Pa.C.S §6109.

(6) Pursuant to 18 Pa.C.S §6109, the sheriff is mandated to adopt for use in such procedure the application form prescribed by the Pennsylvania State Police.

(7) The pre-printed application form for such a license correctly utilized by the sheriff is the form which has been prescribed by the Pennsylvania State Police for such purpose. A true and correct copy of a blank application form and accompanying instructional sheet are marked as Exhibit A and Exhibit B, respectively, and are attached hereto and made a part hereof by this reference. [exhibits not published]

(8) The said pre-printed form requires the applicant to provide the sheriff with certain information which the sheriff uses in his investigation of the applicant to determine the applicant's suitability for a license.

(9) The information provided by the applicant on the application form is critical to the sheriff's decision as to whether to issue a license to the applicant.

(10) The applicant completes the application form by inserting, in spaces provided, the information requested.

(11) Upon completion, the written application is submitted to the sheriff for his review and use in determining the suitability of the applicant for a license.

(12) The sheriff, in making a determination as to whether a license should be issued to the applicant, utilizes and relies upon the information provided by the applicant, as set forth on the written application, as well as any additional information obtained through further investigation conducted by the sheriff subsequent to receipt of the application.

(13) The information provided by the applicant in the written application provides part of the basis upon which the sheriff's decision regarding the issuance of a license is made.

(14) The sheriff currently maintains in his files written applications which pertain to all of the currently

valid licenses to carry firearms which were actually issued by Robert N. Michel in his capacity as the sheriff of Erie County, Pennsylvania.