Irwin W. ARONSON, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY; and Michael J. Acker, in his official capacity as Deputy Secretary for Safety and Standards, Department of Labor and Industry, Respondents.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1997.

Decided April 28, 1997.

---

John T. Kupchinsky, Camp Hill, for petitioner.

Irwin W. Aronson, Camp Hill, for himself.

Richard C. Lengler, Assistant Counsel, for respondents.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, KELLEY and LEADBETTER, JJ.

McGINLEY, Judge.

Irwin W. Aronson (Petitioner) appeals the denial by the Chief Counsel (Chief Counsel) of the Department of Labor and Industry (Department), of Petitioner's request pursuant to the Right to Know Law, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S.

§§ 66.1–66.4, to inspect and copy responses to a prevailing wage survey, and the mailing list of construction employers who received the survey.

The wage survey requested that construction employers voluntarily report data about the wages they paid on certain types of projects during 1995, and the first five months of 1996, to assist the Deputy Secretary for Safety and Standards for the Department (Secretary) to accurately determine prevailing wages. The deadline for responding was September 3, 1996. Letter from Department to Construction Employers, August 7, 1996, at 1.

On July 30, 1996, Petitioner, a citizen of the Commonwealth, requested to inspect and copy the wage survey responses and the mailing list of construction employers. Letter from Petitioner to Secretary, July 30, 1996, at 1; R.R. at 3. The Secretary denied Petitioner's request. The Secretary stated that responses were still being received and the information that was received was not yet processed. The Secretary also stated that the release of the mailing list was restricted by the Unemployment Compensation Law (UC Law)[1] because the list was partially compiled from reports submitted by employers pursuant to the UC Law. Letter from Secretary to Petitioner, August 23, 1996, at 1; R.R. at 4. On August 30, 1996, Petitioner responded and alleged the Secretary misinterpreted the Right to Know Law. Letter from Petitioner to Secretary, August 30, 1996, at 1,2; R.R. at 5,6. The Secretary sent this letter to the Office of Chief Counsel for the Department. By letter dated September 12, 1996, the Chief Counsel denied Petitioner access to both the survey responses and the mailing list of construction employers. The Chief Counsel cited *Aamodt v. Department of Health,* 94 Pa.Cmwlth. 54, 502 A.2d 776 (1986); *A.R. Building Company v. Pennsylvania Housing Finance Agency,* 93 Pa.Cmwlth. 140, 500 A.2d 943 (1985); and *Pennsylvania Association for Children & Adults With Learning Disabilities v. Department of Education,* 91 Pa.Cmwlth. 531, 498 A.2d 16 (1985), and suggested that Petition-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

er's request for the survey responses was, at best, premature. The Chief Counsel noted that "with regard to the mailing lists, we have performed a significant amount of research on the issue, and find that the "lists" cases are amply distinguishable from the present situation." Also, the Chief Counsel reasserted the Department's position regarding confidentiality under the UC Law, relying upon *Tribune–Review Publishing Co. v. Allegheny County Housing Auth.,* 662 A.2d 677 (Pa.Cmwlth.1995). Letter from Counsel to Petitioner, September 12, 1996, at 1,2; R.R. at 8,9.

■ Petitioner raises the following issues for our review: (1) whether the survey responses are public records under the Right to Know Law; and (2) whether the mailing list of construction employers is a public record under the Right to Know Law.[2]

The Right to Know Law authorizes this Court to compel an agency to make public records available for review by the citizens of this Commonwealth. Section 4 of the Right to Know Law, 65 P.S. § 66.4. Section 2 of the Right to Know Law, 65 P.S. § 66.2 provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania."

Section 1(2) of the Right to Know Law, 65 P.S. § 66.1(2), defines the term "public record" as follows:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records"

shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties or any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

## PREVAILING WAGE SURVEY RESPONSES

■ Initially, Petitioner asserts that, because the Secretary intends to use the survey responses to determine the prevailing wage rates, as required under the Prevailing Wage Act and the Wage Act Regulations, the survey was a decision by the Secretary. The Petitioner contends that the information requested qualifies as a public record because it is an agency decision that sets the personal or property rights, privileges, immunities, duties or obligations of a person or group of persons. We disagree.

Pursuant to Section 7 of the Prevailing Wage Act, Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. § 165–7, and the Wage Act's implementing regulations, 34 Pa.Code § 9.105(d), the Secretary is obligated to determine prevailing minimum wage rates for each public work project. The regulation also specifies the types of information which the Secretary should consider.[3] The survey

---

2. Our scope of review is limited to a determination of whether the request for information was for a just and proper cause. *Times Publishing Company, Inc. v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994) (citing *City of Chester v. Getek,* 132 Pa.Cmwlth. 394, 572 A.2d 1319 (1990)).

3. 34 Pa.Code § 9.105(d) states that "[t]he Secretary will conduct a continuing program for obtaining and compiling of wage rate information and shall encourage the voluntary submission of wage rate data by contractors, contractors' associations, labor organizations, public officials and other interested parties, reflecting wage rates paid to workmen in the various types of construction in the locality ... he may have a field survey conducted by his staff representative for

responses do not, independently, affect any person's rights or duties, and because the secretary has not yet analyzed the responses to set prevailing wages the Right to Know Law is only potentially and speculatively implicated.

In *Aamodt*, Norman Aamodt was attempting to obtain information under the Right to Know Act from the Department of Health on a study the Department instituted pertaining to the effects of the Three Mile Island (TMI) accident on pregnancy outcomes in the vicinity of TMI. The Department assured the participants in the study that all identifying data was confidential and that no information was to be released to persons other than "collaborating researchers" without the written consent of the individual involved. Aamodt sent a letter to the Department requesting the "raw data" from the TMI pregnancy study. The Department denied Aamodt's request but offered to provide Aamodt with a statistical abstract of the data once a final report had been issued. Aamodt appealed. This Court determined:

> [T]he "raw data" which the Department [had] used in producing its study . . . [was] neither a minute, order or decision affecting personal or property rights nor . . . [was] it an account, voucher or contract dealing with the receipt or disbursement of funds within the statutory definition of a "public record" subject to disclosure.

*Id.* at 778.

The wage survey responses are the equivalent of the "raw data" exempted in *Aamodt*. A decision fixing the rights or duties of a person is just not the same as gathering information, notations, and evaluations that may or may not be utilized at some future time to fix rights or duties. In this regard, the survey data does not effect the rights of workers, contractors or public bodies under the Prevailing Wage Act. Only after a deci-

sion and prevailing wage rates are set for a particular public work project by the Secretary will rights, duties and obligations be fixed. We note that the Secretary is not compelled by regulation to use the survey results; rather the Secretary has the discretion to determine wage rates after gathering wage rate information in a given locality from various sources.

The Department has a contract with the Pennsylvania State University to compile the data from this survey. Under the contract the Pennsylvania State Data Center is to perform the survey, and compile the responses for the Secretary to make a determination of wage rates. Therefore even though a decision was made to survey certain employers to obtain and compile wage rate information prior to the survey being distributed, no decision fixing personal or property rights has been made. Therefore the Chief Counsel properly concluded that the wage survey responses were not a public record.

## MAILING LIST

■ The Petitioner next contends that the mailing list of construction employers who received the survey is a "public record" and therefore accessible to Petitioner under the Right to Know Law. The Petitioner maintains that because the list of construction employers was compiled by the department pursuant to an obligation imposed by regulation the list is a public record.[4] We agree.

In *Anders v. Department of Treasury*, 137 Pa.Cmwlth. 111, 585 A.2d 568 (1991), Bruce Anders had sought access to a list of unclaimed and uncashed checks which the Department maintained it was forbidden to disclose because of confidentiality provisions in various statutes. This Court concluded that

---

the purpose of obtaining additional information upon which to make a determination of the wage rates. . . ."

**4.** 34 Pa.Code § 9.105(c)(3) states that the Secretary may consider statements signed and certified by contractors and subcontractors and union representatives showing wage rates paid on projects, within the locality. These statements must indicate the names and addresses of the contrac-

tors, including the subcontractors, the locations, approximate cost, dates of construction and type of projects, the number of workmen employed and the number of man hours worked in each craft of classification on each project and the respective wage rates paid the workmen, which wage rates shall consist only of rates paid for services performed solely within the classification for which it is submitted.

the records sought were public records under the Right to Know Law.[5]

In *Young v. Armstrong School District,* 21 Pa.Cmwlth. 203, 344 A.2d 738 (1975), Young was seeking access to a list of names and addresses of kindergarten children. This Court concluded that the list was a public record stating that it was "the sort of record that would provide a basis for determining the location of the school to which the child will attend ... [and therefore] [i]t constitutes ... a record which we believe does fall within the definition of public records under the Act." *Id.* 344 A.2d at 740.

As in *Young* and *Anders,* the present list is a nonconfidential record of those employers the Department determined to survey. The Petitioner did not seek access to any confidential report filed with the Department under the UC Law, or to any confidential information contained in such reports. The Petitioner sought access to the mailing list of construction employers, some of whom were possibly selected from the UC reports, but whose identities were not confidential. The mailing list is a public record even though partially compiled from confidential records. Therefore the Chief Counsel's determination that it was not a public record was error.

Accordingly, the determination of the Chief Counsel of the Department is affirmed in part as to the survey responses, but reversed as to the mailing list of construction employers because it is a public record.

### ORDER

AND NOW, this 28th day of April, 1997, the decision of the Chief Counsel of the Pennsylvania Department of Labor and Industry is affirmed in part as to the petitioners request to inspect and copy responses to the prevailing wage survey, but reversed in part as to the petitioners request for the mailing list of construction employers who

received the survey because this is a public record.

---

5. This Court found that Anders was trying to get the names of businesses, individuals, school districts and municipalities who had unclaimed checks in the possession of the Treasury and the amount of said checks. Further, he specifically stated that he was not seeking information regarding the source of the unclaimed funds. If Anders had attempted to obtain information regarding the source of payment, we stated that dissemination of that information would be prohibited. The absence of any reference to the source of funds, however, eliminated confidentiality problems. *Id.*