Bernard A. Ryan, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Higher Education Assistance Agency, Respondent.

Argued May 6, 1982, before Judges BLATT, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Gordon W. Gerber*, with him *Bernard A. Ryan, Jr., Dechert, Price & Rhoads*, for petitioner.

*John D. Killian*, General Counsel, with him *Thomas W. Scott, Killian & Gephart*, for respondent.

OPINION BY JUDGE BLATT, August 4, 1982:

The petitioner, Barnard A. Ryan, Jr., seeks review of a decision of the Pennsylvania Higher Education

Assistance Agency (PHEAA) which refused to allow him access to certain documents which he requested pursuant to the Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§66.1 – 66.4 (Right to Know Act).

The petitioner, a member of the Pennsylvania bar, sought access to a number of contracts to which the PHEAA was a party, but the PHEAA refused to make the requested documents available unless the petitioner would disclose whom he represented, why he wanted the documents and how they would be used. He then filed a petition for review with this Court seeking to compel disclosure of the contracts and the PHEAA filed preliminary objections and a motion to quash the petition. A memorandum opinion and order were handed down by Judge ROGERS of this Court dismissing Count II of the petition for review, but overruling the PHEAA's motion to quash Count I.[1] *Ryan v. Pennsylvania Higher Education Assistance Agency* (No. 2234 C.D. 1981, filed December 10, 1981). Resolution of the merits of the petition was reserved for decision by this panel.

The petitioner maintains that he, as a citizen of the Commonwealth, has a personal right to seek access to documents under Section 66.2 of the Right to Know Act,[2] 65 P.S. §66.2, and that the contracts which he sought here were clearly public records under Section 66.1(2) of the Right to Know Act, 65 P.S. §66.1(2).

---

[1] Count I of the petition for review was brought within our appellate jurisdiction and Count II sought relief within our original jurisdiction. Count II was dismissed by Judge ROGERS on the ground that a denial of access to public records must be brought to this Court within our appellate jurisdiction. *Shapp v. Butera*, 22 Pa. Commonwealth Ct. 229, 348 A.2d 910 (1975).

[2] Section 66.2 provides

Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania.

He argues that they were "contracts dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property...." *Id.*

The PHEAA has here renewed its motion to quash, contending that this Court has no jurisdiction in the instant case because the petitioner was an attorney who admittedly represented a client who was not a citizen of the Commonwealth and could not therefore seek disclosure of documents under the Right to Know Act and that the petitioner should have no more right to access to these admittedly public records than his client.

We must agree with Judge ROGERS that this argument is meritless. The clear wording of Section 66.2 of the Right to Know Act permits *any* citizen of the Commonwealth to examine and inspect public records. The PHEAA would have us rewrite that section to create an exception whereby a member of the Pennsylvania bar who represents an out-of-state client would be treated differently from other citizens of the Commonwealth and would be denied access to public records. This we will not do.

The PHEAA also argues that Section 4(1.1)(iii) of the Act of August 7, 1963, P.L. 549, *as amended* (Act 130), 24 P.S. §5104(1.1)(iii), gives the Attorney General of the Commonwealth the exclusive authority to review requests for PHEAA documents such as these and that this Court should therefore transfer the instant question to the Attorney General.

Act 130 provides in pertinent part that PHEAA shall have the power:

(iii) To enter into contracts with schools, lenders, corporations, the student loan marketing association, other agencies of the Commonwealth, other states and the federal government to service student loans. Any such

contract of the agency to service student loans shall not be subject to the provisions of the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right-To-Know Law. For purposes of this clause, contract shall include schedules or exhibits relating to pricing or schedules relating to equipment, time charges, service charges or other charges pertinent to an agency contract to service student loans. Any citizen of the Commonwealth of Pennsylvania who desires to examine, inspect or copy any such contract shall apply to the Attorney General. Upon receipt of any such application, the Attorney General shall cause a review of the contract to determine if the disclosure of the contents of the contract could cause a loss of revenue to any Commonwealth fund or to the agency. If the Attorney General determines that it is unlikely that a loss of revenue to any Commonwealth fund or the agency could occur, the Attorney General may grant the application and order the agency to permit the citizen to examine, inspect or copy the contract. Otherwise, the Attorney General shall deny the application. The Attorney General shall also have the power to determine that portions of the contract may be examined, inspected or copied and other portions may not. The agency may adopt and enforce reasonable rules, subject to the approval of the Attorney General, governing the examination, inspection or copying of any such contracts. The Attorney General shall make a determination for any application within thirty days of receipt thereof.

Act 130, however, was enacted on November 25, 1981, which was after the petitioner's August, 1981 request for the documents and also after his filing of this

action to compel disclosure in October of that year. We must determine, therefore, whether or not that part of Act 130 requiring the Attorney General to review applications for access to PHEAA contracts applies to the present case.

The PHEAA asserts that we should interpret Act 130 to be retroactively applicable to the instant petition because (1) the petitioner's right of access to documents was statutory and he had no valid expectation that this action could be maintained before this Court because the General Assembly could extinguish any right given by the Right to Know Act by subsequent legislation, (2) Act 130 was remedial legislation which should be interpreted in order to protect the public interest as against any private interest, and (3) Act 130 did not alter substantive rights but enacted only a procedural change in the available remedy.

As to the first argument that the petitioner was aware that the legislature had the power to negate a right which it had previously granted and that he brought his suit subject to the possibility that the General Assembly might retroactively apply its authority to extinguish his right, we believe that the question here is not whether the Assembly had the power to enact retroactive legislation, but whether or not that power was exercised in Act 130. Retroactive application of a statute can occur, of course, but it is not automatic and is, in fact, the exception. Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1926, enunciates the general rule that legislative enactments are not to be applied retroactively unless such an effect is clearly and manifestly intended by the General Assembly, and our Supreme Court has recognized that the legislature is fully aware of how to apply a statute retrospectively, *Commonwealth v. Repplier Coal Co.*, 348 Pa. 372, 35 A.2d 319 (1944); *S. D. Richmond Sons v. Board of Finance and Revenue*, 53

Pa. Commonwealth Ct. 110, 416 A.2d 1161 (1980). Our examination of Act 130 reveals no such clear manifestation.[3] Nor does the PHEAA's argument that Act 130 is remedial legislation and should therefore be interpreted against disclosure[4] persuade us that we should ignore the requirement of a showing of the clear intent on the part of the legislature favoring retroactivity.

It is true that the rule against application of a statute retrospectively would not apply to the interpretation of a statute which effected only a procedural change and did not alter substantive rights, *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1960), but we believe that Act 130 did impose a substantive limitation and did not merely invoke a new procedure. Act 130 encompassed procedural changes by requiring that requests for PHEAA documents be channelled through and reviewed by the office of the Attorney General, but, more importantly, for purposes of this litigation,

---

[3] In *Klug v. Gazey*, 270 Pa. Superior Ct. 445, 411 A.2d 802 (1979), the Superior Court found that an amendment to 18 Pa. C. S. §5513 to protect antique slot machines from destruction was applicable to slot machines which had been seized prior to the amendment of the statute. That Court expressly noted, however, that retroactive application of the amendment was not involved in that case, stating, " '[A]n act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date.' " *Id.* at 449, 411 A.2d at 804 (quoting *Burger v. Unemployment Compensation Board of Review*, 169 Pa. Superior Ct. 89, 94, 77 A.2d 737, 739 (1951)). We believe that the instant case is distinguishable from *Klug* in that here the request for documents was made and rejected prior to the passage of Act 130 and application of the Act would necessarily relate to an event which occurred prior to its effective date and would therefore be retroactive.

[4] We question the PHEAA's characterization of Act 130 as remedial legislation. The public may very well have as great an interest in full disclosure of public documents as it does in protecting the availability of federal funds.

Act 130 also contained additional limitations on public access to the type of contracts which were concerned here. It expressly exempted such contracts from the provisions of the Right to Know Act and thereby imposed a reduction of the availability of such PHEAA documents. We believe, therefore, that Act 130 should *not* be applied retroactively not only absent any showing of a clear legislative intent that it have that effect but also because it modified substantive, not merely procedural, rights.

The PHEAA maintains also that the documents sought by the petitioner here would be exempt from disclosure under the definition of "public record" contained in Section 66.1(2) of the Right to Know Act[5] if

---

[5] Section 66.1(2) provides:

(2) "Public Record." Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment ,or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment or a person's reputation or personal security, or, which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

the disclosure of those contracts[6] would result in the loss of federal funds and that, at the very least, this case should be remanded for a factual determination as to whether or not such loss would occur. It has directed us to no federal law or regulation, however, which mandates that federal funds be cut off if public access to these contracts is allowed and our own research has revealed none. In addition, the PHEAA has offered no further basis for anticipating a possible loss of federal funds other than a hypothetical scenario concerning advice from a "responsible official" to the effect that disclosure of such contracts as these could cause a refusal to renew similar contracts in the future. Even if the PHEAA were to demonstrate conclusively that it had actually received such advice, we are not at all convinced that such evidence without some support in law or regulation would be legally sufficient to establish that disclosure of the requested documents *would* result in a loss of federal funds and, in the absence of a more concrete showing by the PHEAA that some law or regulation would require such an effect, we do not believe that a remand is required here.[7]

Inasmuch as we have concluded that the petitioner, as a citizen of the Commonwealth, had a right to access to certain public records held by the PHEAA and we have not found that reasonable grounds exist to establish that the said documents are exempt from disclosure, we will order the PHEAA to comply with the petitioner's request.

---

[6] The PHEAA has not attempted to argue that the contracts requested by the petitioner do not fall within the general definition of public records contained in the first sentence of Section 66.1(2) of the Right to Know Act. *See* fn.5.

[7] We would note that application of Act 130 to future document requests would seem to obviate any threat that continued disclosure of contracts such as these would jeopardize the availability of federal funds.

## ORDER

AND Now, this 4th day of August, 1982, the decision of the Pennsylvania Higher Education Assistance Agency in the above-captioned matter is reversed and it is ordered that said Agency give access to the petitioner, Bernard A. Ryan, Jr., to such documents as are now in its possession and which were specified in his request dated August 12, 1981.