585 A.2d 568

**Bruce K. ANDERS, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TREASURY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1990.

Decided Jan. 4, 1991.

Bruce K. Anders, Wilkes–Barre, pro se.

James M. White, Gen. Counsel, with him, Michael W. Arpey, Asst. Gen. Counsel, and Roger S. Spalding, Deputy Gen. Counsel, Harrisburg, for respondent.

Before COLINS and BYER, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Section 2 of what is commonly referred to as the Right–to–Know Act[1] provides: "Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." Having learned from newspaper accounts about the existence of more than 50,000 unclaimed or uncashed checks discovered by the Pennsylvania Department of Treasury (Department), Bruce K. Anders, a Pennsylvania attorney, sought permission to inspect the Department's records under that statutory authority. His request was denied. Anders has petitioned for our review of that denial, exercising his right of appeal under Section 4 of the Act, 65 P.S. § 66.4.

At issue[2] is whether the records Anders seeks to inspect fall within any of the four exceptions to the definition of

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. § 66.2 (Act).

2. On appeal, the Department has not challenged either Anders' status as a citizen, nor its own as an "agency" as the term is defined in Section 1(2) of the Act, 65 P.S. § 66.1(2).

"public record" contained in Section 1(2) of the Act: [3]

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean [1] any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is [2] prohibited, restricted or forbidden by statute law or order or decree of court, or [3] which would operate to the prejudice or impairment of a person's reputation or personal security, or [4] which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

The Department contends that the records Anders seeks fall within all four statutory exceptions. We disagree and reverse.

■ The Department first argues that disclosure of the unclaimed uncashed check list would reveal the institution, progress or result of an investigation. It asserts that its list is the starting point of an investigation to determine whether the payees of the checks are rightfully entitled to them. This "investigation," according to the Department's brief, consists of contacting the persons on the list and requiring them to execute an affidavit verifying that they are entitled to have the check reissued. The Department

3. The Department does not argue that its unclaimed uncashed check list is not a public record.

claims that providing Anders with the list of payees, which it refers to as the "raw data" (Department's brief p. 12) of its investigation "will jeopardize the ability of Treasury to identify those individuals with *legitimate* and *lawful* ownership interests." (*Id.*, emphasis in original). (Why or how this would occur, given the fact that the Department has the names of potential payees and is in the process of contacting them, is unexplained).

Anders argues that the Department's search of its own records in order to compile a list of checks which had not been presented for payment does not constitute the sort of investigation envisioned by the statutory exception. From our review of the cases the Department itself cites, we must agree with Anders.

Shortly after the passage of the Act in 1957, our Supreme Court had the occasion to examine the so-called "field investigation" exception to the definition of public records. In *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844 (1958), the Court held that the field notes of a staff member who had prepared a report for a city council member were not subject to disclosure. Similarly, an internal investigation of a charge lodged by an unidentified complainant that a police officer was guilty of receiving stolen property was held to fall within the exception in *Barton v. Penco*, 292 Pa.Superior Ct. 202, 436 A.2d 1222 (1981). In *Pastore v. Pennsylvania Insurance Department*, 125 Pa.Commonwealth Ct. 611, 558 A.2d 909 (1989), this Court concluded that an insurance agent was properly denied access to the insurance department's internal investigation file which led to the filing of various charges against the agent.

Although the Department argues that its investigation goes beyond its own records, it is clear that the records Anders seeks do not. The Department has attached a copy of its form letter seeking additional information from payees in Appendix 1 of its brief. That letter informs the payee that he is being contacted pursuant to an examination of Department records which reveal the existence of an uncashed check payable to him. Anders is not seeking the

information which may be gathered as a result of responses by payees to the Department's communication. Further, the fact that the Department itself encouraged publicity of its efforts to locate the payees on its list is an indication that it does not view its list as confidential information, nor may we conclude that confidentiality here is in the public interest as it was in both *Barton* and *Pastore*. For these reasons, we reject the Department's contention that its list falls within the field investigation exception.

■ The Department's second argument is that disclosure of its list falls within the second statutory exception in that it is forbidden by statute or case law. It contends that release of its list would violate confidentiality provisions contained in various statutes such as the Public Welfare Code,[4] state and federal statutes prohibiting the dissemination of information regarding guaranteed student loans, the Unemployment Compensation Law,[5] and the Tax Reform Code of 1971.[6]

Resolution of this contention hinges upon a determination of what information Anders seeks to obtain. As Anders explains in his brief, he is trying to get "the names of businesses, individuals, school districts and municipalities who have unclaimed checks in the possession of the Treasury and the amount of said checks." (Anders' brief p. 6). Further, he specifically states that he is not seeking information regarding the source of the unclaimed funds. (*Id.* p. 12).

The Department's argument concerning confidentiality seems to assume that Anders wishes to obtain information regarding the source of payment. If that were so, we would agree that dissemination of that information would be prohibited in certain instances. The absence of any reference to the source of funds, however, will eliminate confidentiality problems.

4. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 101–1411.

5. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

6. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

The cases to which the Department refers us do not support its position. In *McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A.2d 888 (1973), *appeal dismissed*, 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 (1974), a newspaper, through four reporters, sought from the Secretary of the Department of Public Welfare the names, addresses, and amounts received by all public assistance recipients in the City of Philadelphia. The Supreme Court upheld the Secretary's denial since the Public Welfare Code prohibits the release of welfare recipients' names. Therefore, the Court held that disclosure would be barred by the Act's exception which prohibits the release of information prohibited by statute. Significantly, the information sought in *McMullan*, the names of welfare recipients, was precisely the information the statutory provision was intended to protect from disclosure.

In *Ryan v. Pennsylvania Higher Education Assistance Agency*, 68 Pa.Commonwealth Ct. 123, 448 A.2d 669 (1982), an attorney sought information from the agency relating to contracts to which the agency was a party. The issue in *Ryan* was whether a statute passed after his request to the agency, which prohibited disclosure of the sort of contracts he sought to obtain, should be applied retroactively. We held that it should not.

Finally, in *Elliott v. Unemployment Compensation Board of Review*, 82 Pa.Commonwealth Ct. 107, 474 A.2d 735 (1984), the issue was whether an employee's conduct in disclosing confidential tax information to a reporter constituted willful misconduct so as to deny him the right to unemployment compensation benefits. As justification for his action, the employee relied upon the Act, claiming that the information released was not confidential. We held that the Act did not apply where the employee voluntarily released information which had not been solicited.

In short, the Department's argument, if accepted, would eliminate broad categories of information from the disclosure requirements of the Act. While the Act excludes dissemination of information specifically protected from dis-

closure by statute, we believe the Department must correlate the information sought with the statutory prohibition. It has not done so here, and we must conclude that the records sought do not fall within the second statutory exception.

■ The Department's third argument is that the disclosure of its list would prejudice or impair individuals' reputations, falling within the third statutory exception. The Department cites two categories of examples. The first is those individuals whose reputations may be impaired due to allegations of professional incompetence for failing to seek out funds due to public bodies. The second involves individuals whose reputations may be affected by knowledge of their receipt of payments from sources such as public assistance, unemployment compensation or disability funds.

The Department's first example is surprising in that the specific incident to which it refers arose as a result of publicity surrounding Treasurer Knoll's delivery of checks totalling over $200,000 to Beaver County. In a newspaper article appended to the Department's brief, the County Commissioner who accepted the checks vaguely alluded to irresponsibility on behalf of the unnamed person responsible for keeping track of incoming revenues.[7]

This argument loses sight of both the statutory language and the nature of the records sought. Section 1(2) of the Act prohibits disclosure of "any record ... the publication of which ... would operate to the prejudice or impairment of a person's reputation...." Using the Department's example of a public employee who may have failed to ensure that public monies owed were received by his employer, we fail to see how disclosure to Anders of the payee list, including an uncashed check payable to that employer, is capable, without more, of impairing the unnamed employee's reputation.

7. Apparently the Department does not see the inconsistency here. It, on the one hand, may proudly publicize its efforts to reissue uncashed checks without regard to the consequences of potential impairment of individuals' reputations, but Anders, on the other hand, must, according to the Department, be prohibited· by the Act from doing so.

The Department's argument with respect to the second category of persons whose reputations might be impaired is flawed in the same manner as its previous argument regarding confidentiality: it assumes disclosure of the source of payment. Since that information is neither sought nor required to be furnished, no prejudice to nor impairment of reputation will result.

■ The Department's next argument is that disclosure of its payee list will result in the loss of federal funds by the Commonwealth, the fourth statutory exception, if it fails to restrict the disclosure of information concerning the applicants for or recipients of various federal programs. Once again, because disclosure of the list Anders seeks will not include information which would reveal the payees' participation in federal programs, the fourth exception does not apply.

■ The Department makes one final argument which is more properly addressed to the legislature than to this Court. It contends that we ought to preclude disclosure of its list on public policy grounds. It asserts that Anders' purpose is to serve as a "tracer," one who intervenes on behalf of another to track down unclaimed funds for a fee. The Department characterizes this activity as "unscrupulous" and the fees generally charged as "exorbitant" (Department's brief p. 24) and suggests that this Court is in a position to protect "thousands of Pennsylvanians [from] potential 'flim-flam' artists." (*Id.* p. 25).

Anders counters with two points: first, a citizen's purpose has been held to be irrelevant in considering a request to obtain documents under the Act; and second, if public policy is considered, it must be borne in mind that the Department's continued motivation to reissue checks may be affected by the fact that the funds will eventually escheat to the Commonwealth if unclaimed.

In *Wiley*, our Supreme Court recognized that purpose was not relevant. It stated:

Undoubtedly, the legislature intended through the medium of the statute a clarification of the right of examination and inspection of public records by all citizens, regardless of their interest or the extent or nature thereof. Within the statutory language is embraced all citizens and not simply those citizens who by some courts might be denied the right of examination and inspection because of lack of interest or legitimate purpose.

*Id.* 393 Pa. at 350, 141 A.2d at 849.

Previous arguments based upon a petitioner's expressed or unexpressed motivation in seeking access to public records have proved unavailing as Anders points out. *See, e.g., Hoffman v. Pennsylvania Game Commission,* 71 Pa.Commonwealth Ct. 99, 455 A.2d 731 (1983) (petitioner's supposed commercial use of game commission mailing list irrelevant to determination of whether list a public record); *Marvel v. Dalrymple,* 38 Pa.Commonwealth Ct. 67, 393 A.2d 494 (1978) (right of any citizen to examine public record not dependent upon personal or property right); *Mergenthaler v. Pennsylvania State Employes' Retirement Board,* 33 Pa.Commonwealth Ct. 237, 372 A.2d 944 (1977) (possibility of unscrupulous use of public records not relevant in determining whether personal security exception applies).

Because Anders' purpose is not pertinent to our inquiry, we need not get involved in a discussion of the relative merits of either party's underlying motivations.

For all of these reasons, we will reverse the Department's decision denying Anders the opportunity to inspect these records. We will direct that Anders be granted access to the Department's list of payees, which shall not include information relating to the source of the unclaimed uncashed checks.

## ORDER

AND NOW, this 4th day of January, 1991 the order of the Department of Treasury denying Bruce K. Anders'

request to inspect its records of uncashed checks is hereby reversed and the Department is directed to grant Anders access to those records in accordance with the terms of the foregoing opinion.