618 A.2d 1227

**MON VALLEY UNEMPLOYED COMMITTEE, Barney Oursler, and Paul Lodico, Petitioners,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 23, 1992.

Decided Dec. 22, 1992.

Reargument Denied Feb. 12, 1993.

John Stember, for petitioners.

Jason W. Manne, Asst. Counsel, for respondent.

Before CRAIG, President Judge, McGINLEY, Judge, and NARICK, Senior Judge.

CRAIG, President Judge.

Barney Oursler, Paul Lodico and the Mon Valley Unemployed Committee [1] appeal a decision of the Commonwealth of Pennsylvania Department of Public Welfare (DPW) that denied the committee's request for a list of individuals against whose real property DPW has an unsatisfied lien under DPW's regulation at 55 Pa.Code § 257.24(a)(1)(ii).

### Issue Presented

The general question presented is whether the Right to Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. § 66.1 et seq., gives the committee the right to obtain from the department a list of the names and addresses of all public assistance recipients against whom DPW has an unsatisfied recorded property lien.

The pivotal issue is whether DPW must assemble and provide such a list of names and addresses when the law expressly limits the release of public assistance recipient information to situations where the *inquirer* has supplied the name of each recipient as to whom information is sought.

1. The petitioners in this case will be referred to as "the committee" throughout this opinion.

This court's conclusion is that the statutes, as interpreted by the Supreme Court, forbid compliance with this request.

## History

The committee is a non-profit organization whose members include unemployed and under-employed workers. Paul Lodico and Barney Oursler, the co-directors of the committee, are also co-directors of a political committee called "The Campaign to Remove the Welfare Lien."

Under 55 Pa.Code § 257.24(a)(1)(ii), DPW may obtain a "welfare lien" against any real property owned by applicants for cash assistance. That regulation requires each welfare recipient who is a homeowner to sign a confession of judgment which gives the department permission to enter a judgment against their real property. The welfare lien judgments are recorded in the prothonotary's office in the county where a welfare recipient owns real property, to provide public notice of the DPW's lien against the property.

By way of letter dated July 10, 1991, the committee requested that the department "make available" the names and addresses of all individuals against whom DPW has entered an unsatisfied judgment for public assistance received. (Brief for Petitioners, Exhibit B) In that letter, the committee stated that it sought the list because it would be impractical and burdensome to gather the information needed from each county. The letter stated that the list would not "be used for any commercial or any *partisan* political purpose." (Emphasis added)

The department denied the committee's request and this appeal followed.

The committee contends that the information it requested from the department constitutes public records, which DPW is required to disclose under the Act, and does not fall under any of the Act's exceptions.

## The Statutes

The Act gives "any citizen of the Commonwealth" the right to have "every public record" held by an agency, open for

examination and inspection. A public record is defined by Section 1 of the Act as:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property of any minute, order, or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons . . .

65 P.S. § 66.1.

In the present case, records of property liens of course would initially fall within that definition as records "fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons . ."

However, under the Act, the term "public record" does *not* include:

> . . . any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties or any record, document, material, exhibit, pleading report, memorandum or other paper, access to or publication of which is *prohibited, restricted or forbidden by statute law or order or decree of court,* or which would operate to the prejudice or impairment of a person's reputation or personal security . . .

*Id.* (Emphasis added)

Although DPW does not dispute that the information the committee requested constitutes public records under the Act, DPW argues that the Act exempts those records from disclosure based on prohibitory language in section 404(a)(1) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended* 62 P.S. § 404(a)(1). That statute states in relevant part:

> (a) The department shall have the power to make and enforce regulations:
>
> (1) To protect the names of applicants for and recipients of public assistance from improper publication, and to restrict

the use of information furnished to other agencies or persons to purposes connected with the administration of public assistance. Upon request by *any adult resident of the Commonwealth, the department may furnish the address and amount of assistance with respect to persons about whom inquiry is made; but information so obtained shall not be used for commercial or political purposes ...*

(Emphasis added)

Section 404(a)(1) restricts the use or disclosure of information concerning welfare recipients in order to protect the privacy rights of individuals who receive welfare benefits. Similarly, under 42 U.S.C. § 602(a)(9), a state must restrict the use or disclosure of information concerning welfare recipients, and may enact legislation permitting the disclosure of such information only if "such legislation prohibits the use of any list or names obtained through such access to such records for *commercial or political purposes.*"

In addition, information concerning public assistance recipients may be released, under other relevant statutes, for other limited purposes. For example, under 45 C.F.R. § 205.-50(a)(1)(i)(A) (1991), DPW may release information in order to carry out the administration of public assistance programs. As the committee notes, 55 Pa.Code § 105.4(b)(1) gives the department express authority to disclose to the prothonotary's office in the county where the property is located, the names and addresses of welfare recipients against whom DPW has a property lien.

### Information as to Specified Recipients

Under the limited exception to non-disclosure in § 404(a)(1), an adult resident of the Commonwealth may make a specific inquiry and obtain a recipient's address and amount of assistance he receives. However, a person who obtains such information may not use it for commercial or political purposes. *See also* 45 C.F.R. 205.50(a)(1)(iv) (1991).

In *McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A.2d 888, 897 (1973), reporters from a newspaper company requested DPW's permission to examine and inspect departmental lists

containing the names and addresses of, and amounts received by, public assistance recipients. The Pennsylvania Supreme Court held that the newspaper could not gain access to the list it requested because § 404(a)(1) of the Code prohibited such a release and thus the exception to the right to access of public records under the Right to Know Act applied.

The *McMullan* court held that, under § 404(a)(1), 1) the requesting adult *must* supply the name(s) of a recipient(s) *before* the department could disclose the information, 2) all requests for information must be made by an adult resident of the Commonwealth, and 3) the information could not be used for a commercial or political purpose. The court held that the newspaper had failed to meet all three requirements of the above test.

The court reasoned that the newspaper was not an "adult resident of the commonwealth" but rather a corporation, and thus did not meet the first part of the test. Secondly, the *McMullan* court held that, because the newspaper requested a general listing of recipients and did not submit specific names of recipients, disclosure would not be permitted. Lastly, the court noted that, the newspaper had not established that, once it obtained the information, the information would not be used for non-political and non-commercial purposes.

The Committee argues that *McMullan* is distinguishable from the present case because the committee has not requested the names and amounts received of *all* welfare recipients, but only those with welfare liens against their properties. However, § 404 specifically requires that individuals seeking welfare information submit requests based on specific recipients' names. In this case, the committee seeks information on *all* welfare recipients with a lien against their property. The committee would have to submit a specific list of names to DPW in order to meet the first requirement under *McMullan.*

The committee also argues that the present case is distinguishable from *McMullan* because the request is restricted to information which DPW has already disclosed. However, the fact that the information requested is available in the prothonotary's office in each county of property with a welfare lien is

irrelevant for the purposes of § 404. That section prohibits the release of information to members of the public in order to protect the confidentiality of the particular agency's files.

As stated above, there are a few limited exceptions to the privacy rights of welfare recipients, one of which includes the release of information to carry out the administration of public assistance programs. The fact that DPW publicizes the information in order to provide notice of the lien has no bearing on the requirement, under section 404, that the department prohibit the releasing of the information for other purposes.

The committee cites *Anders v. Department of Treasury,* 137 Pa.Commonwealth Ct. 111, 585 A.2d 568 (1991) to support its argument that, where an agency has publicly disclosed information, it cannot later claim that the information is confidential. However, *Anders* is distinguishable from the present case. In that case, an attorney who learned from newspaper accounts about the existence of more than 50,000 unclaimed or uncashed checks discovered by the Pennsylvania Department of Treasury, sought permission under the Right to Know Act, to inspect the department's records.

The department argued that, although the *checks* were "public records" under the Act, they fell within all four of the exceptions under the Act providing for non-disclosure of public records. The department argued that the records were confidential under the exception to the Act providing that disclosure is not permitted if the publication of the records would disclose the result of an investigation undertaken by an agency.

This court held that the list was not within any of the exceptions under the Act. Because the department had encouraged publicity about its efforts to locate the payees on its list, this court held that the list was not confidential as involving a private investigation, which would have brought it under the protections of that exception to the Right to Know Act. The *Anders* holding, that the list in that case could not be confidential for investigative purposes when the department had made the list public, is not applicable to the present case because the department is not claiming here that the list

is protected from disclosure under the investigation exception to the Right To Know Act.

## The Political Purpose Question

Also, in this case, the committee has not established that it will not use the information for political purposes. Although the letter states that the committee will not use the listing for *partisan* political purposes, the members of the committee are directly involved in the "Campaign to Remove the Welfare Lien," a campaign which may well involve obtaining legislative enactments to amend or repeal the law, which would clearly be a political matter, i.e. a matter relating to government. The meaning of "political" is not confined to *party* politics, and does include, as established by the dictionary definition of "political," matters "relating to government, a government, or the conduct of governmental affairs." Webster's Third New International Dictionary 1143 (1966).

With respect to the issue of whether the committee would have used the listing for "political purposes," a remand for a hearing could be appropriate to settle that matter. However, because we have decided this case in accordance with the Supreme Court's decision in *McMullan*, determination of the facts, as to the political purpose issue, is not necessary.

Accordingly, DPW's decision is affirmed.

## ORDER

NOW, December 22, 1992, the decision of the Commonwealth of Pennsylvania Department of Public Welfare, dated July 22, 1991, is affirmed.