### PHILADELPHIA NEWSPAPERS, INC. publisher of the Philadelphia Inquirer, Appellants,

v.

### HAVERFORD TOWNSHIP, Haverford Township Police Department, Gary E. Hoover and Charles Brooks.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1996.

Decided Dec. 5, 1996.

---

Amy B. Ginensky, Philadelphia, for appellants.

Paul J. Winterhalter, Philadelphia, for appellees.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Philadelphia Newspapers, Inc. (PNI) appeals from an order of the Delaware County Court of Common Pleas refusing it access under the Pennsylvania Right to Know Act (Act), Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1—66.4 to audiotapes containing certain telephone calls made to and from the Haverford Township Police Department.[1]

The facts of this case are essentially not in dispute and are largely drawn from PNI's brief. On March 17, 1995, an officer of the Haverford Township Police Department witnessed a man driving his car erratically. The man's speech was slurred, his eyes were bloodshot, and he failed two field sobriety tests. The individual went back to the police station, where he passed a chemical test of his breath. Although the police eventually released this person, while he was being processed through the system, the Vice–President of the Board of Commissioners of Haverford Township, John McDonald, telephoned the police department communications center and asked about the arrest. McDonald and the arrested man were long-standing friends. The police department taped McDonald's call, as dictated by procedure. Later, police sergeant Glenn Ziegler twice returned McDonald's phone call. Sergeant Ziegler's calls were also taped, in accordance with procedure. The individual in question was eventually released from custody and charges were not filed against him.

The police department thereafter investigated Sergeant Ziegler's actions. The audiotapes of the three phone calls at issue were heard in the course of the internal investigation. The investigation determined that the sergeant's actions were appropriate. No charges were filed and no disciplinary action was taken against any officer.

On January 9, 1996, over nine months after the incident at issue, a PNI reporter asked Haverford Township's Police Chief, Gary Hoover, to allow him access to the audiotapes of the phone calls. A police lieutenant, Charles Brooks, responded to PNI's request, explaining that such tapes are not released without a subpoena or court order. The lieutenant also explained that "[t]hese recordings are kept on a reel to reel tape for thirty days, after which the tape is reused." (Letter of Lieutenant Charles Brooks to Justin Pritchard of PNI, dated January 22, 1996). The tapes were preserved, however, in the police investigation file.

PNI made other requests for the audiotapes through its lawyers, to no avail. PNI then appealed to the common pleas court, asserting that the audiotapes were a "public record" that fell within no exceptions to disclosure under the Right to Know Act. After a "hearing" during which counsel for both parties made oral argument and counsel for PNI introduced exhibits, the common pleas court denied PNI's request for access to the audiotapes, deciding that they came within the Act's "field investigation" exception to disclosure. PNI now appeals to this Court.

■ PNI merely asks us whether the field investigation exception of the Right to Know

---

1. PNI had filed a notice of expedited appeal with the common pleas court from the appellees' denial of its request for access to the audiotapes, citing Section 4 of the Act, 65 P.S. § 66.4. That section states:

   Any citizen of the Commonwealth of Pennsylvania denied any right granted to him by section 2 or section 3 of this act, may appeal from such denial. If such court determines that such denial was not for just and proper cause under the terms of this act, it may enter such order for disclosure as it may deem proper. (Footnote omitted). PNI then filed a motion for expedited consideration of its appeal under the Right to Know Act. It is this motion which the common pleas court denied.

Act precludes disclosure of the requested audiotapes.[2]

■ In 1957, our General Assembly codified the common law right of a party to inspect public records, calling it the Right to Know Act. *Tribune–Review Publishing Company v. Allegheny County Housing Authority,* 662 A.2d 677, 679 (Pa.Cmwlth.1995). Section 2 of the Act provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." Section 1(1) of the Act defines an agency in relevant part as "any political subdivision of the Commonwealth...." Section 1(2) defines a public record in part as follows.

> (2) "Public Record." Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants ...

65 P.S. § 66.1(2). In *Gutman v. Pennsylvania State Police,* 148 Pa.Cmwlth. 567, 612 A.2d 553, 555 (1992), *appeal denied,* 533 Pa. 638, 621 A.2d 583 (1993), we stated that "[s]ection 1(2) has been broadly construed to require only some form of action by an agency that has an effect on someone. *Pastore v. Insurance Department,* [125 Pa.Cmwlth. 611, 558 A.2d 909 (1989) ]."

This Court, in *Tribune–Review,* 662 A.2d at 677, explained that the Act is intended to assure the availability of government information to citizens of the Commonwealth by permitting access to official information. Under the Act, a broad construction is given to the initial determination of whether a document is a public record "to be tempered as an opposing party brings into play the enumerated exceptions." *Marvel v. Dalrymple,* [38 Pa.Cmwlth. 67, 393 A.2d 494, 497 (1978) ].

Before the common pleas court, the arguments did not focus on whether the requested audiotapes came within the general statutory definition of a public record. *See Times Publishing Company,* 633 A.2d at 1235. Instead, the parties proceeded to urge their respective positions with regard to the operation of the field investigation exception.

■ Under the circumstances here, however, PNI asserts that, because the recordings were made before any investigation took place, they do not come within the field investigation exception, citing in particular *Times Publishing Company* and *Anders v. Department of Treasury,* 137 Pa.Cmwlth. 111, 585 A.2d 568 (1991). According to PNI, the audiotapes do not disclose the "institution, progress or result" of any investigation. PNI makes a distinction between protecting the investigation versus protecting the potentially inappropriate behavior leading to the investigation. PNI contends that the public interest is not served by permitting public records later used in an investigation to be shielded by the field investigation exception.

Of course, we have reviewed *Times Publishing Company* and *Anders.* In our opinion, neither case is apposite. For instance, in *Times Publishing Company,* a reporter sought the right to view and copy written applications for licenses to carry firearms, which applications had already been approved by the sheriff. The information gathered on these applications was collected before the sheriff conducted any background

---

2. Our scope of review is limited to determining whether the common pleas court's denial of PNI's request for the audiotapes was for just and proper cause. *See, e.g., Times Publishing Company, Inc. v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994); *Morning Call, Inc. v. Lower Saucon Township,* 156 Pa.Cmwlth. 397, 627 A.2d 297 (1993); *Nittany Printing & Publishing Company, Inc. v. Centre County Board of Commissioners,* 156 Pa.Cmwlth. 404, 627 A.2d 301 (1993). *See also* 65 P.S. § 66.4.

investigations, and, therefore, we declined to apply the field investigation exception. In *Anders,* a lawyer sought records relating to the existence of 50,000 or more unclaimed or uncashed checks which the state treasury department had found. We also declined to apply the field investigation exception in that case, where the information the attorney sought was contained within the treasury department's own records and was not to be gleaned from outside communications. In other words, that information was also gathered before any investigation was commenced.

While, at first blush, PNI's assertions that the recordings which they seek also were made prior to any investigation and do not come within the field investigation exception seem reasonable, a deeper examination of these contentions reveals their tenuous nature. The striking difference between this case and *Times Publishing Company* and *Anders* is that, here, PNI seeks information which would not exist *but for* the investigation. That is, as the appellees assert, had there been no investigation, there would be no audiotapes for PNI to request pursuant to the Right to Know Act.

PNI, necessarily, attempts to complicate matters by contending that the appellees are incorrectly distinguishing between the confidentiality inherent in the investigation of potentially improper conduct and that conduct itself. In our view, however, it is PNI that fails to comprehend the subtle—but important—difference between potentially bad or unethical acts leading to an investigation, and the recording of those acts that was preserved solely for the purposes of an investigation. Certainly, the audiotapes that PNI seeks could disclose the evidence on which the "progress" or "result" of the appellees' investigation was based; the contents of those recordings could have formed some portion of the police department's decision not to discipline or charge any officer with respect to the release from custody of the individual arrested in this case.

Obviously, the fact that PNI requested the audiotapes from the police department more than nine months after they were made does not aid its position. As well, PNI made no showing to the common pleas court that the investigation—without which neither party disputes that the tapes would have been destroyed—was an exercise in mere artifice.[3]

Last, we note that we are not persuaded by PNI's argument that to hold as we now do would render any document later included in an investigative file inaccessible to the public under the field investigation exception to the Right to Know Act. This determination in no way indicates that all documents preserved in the course of an investigation are closed to public examination and inspection by the citizens of this Commonwealth. We only hold that these tapes under the circumstances of this case are not subject to disclosure under the Right to Know Act.

Accordingly, the common pleas court's order is affirmed.

### *ORDER*

AND NOW, this 5th day of December, 1996, the order of the Court of Common Pleas of Delaware County, No. 96–1897, dated March 25, 1996, is hereby affirmed.

---

**3.** It would be disingenuous to think PNI wants these tapes for any reason other than to prove that the investigation was a sham and the communications between McDonald and Ziegler were improper. PNI does not contend otherwise. Nonetheless, we can think of no logical reason why the police department would maintain evidence of impropriety when it could easily have allowed any such evidence to be destroyed by failing to conduct an investigation.