**LEGAL CAPITAL, LLC and Charles I. Artz, Petitioners,**

v.

**MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1997.

Decided Nov. 6, 1997.

Charles I. Artz, Harrisburg, for petitioners.

Guy A. Donatelli, West Chester, for respondent.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Legal Capital, LLC, and Charles I. Artz, Esquire (Legal Capital) petition for review from the Medical Professional Liability Catastrophic Loss Fund's (CAT Fund) denial of a request made by Legal Capital pursuant to the Act commonly known as the Right–to–Know Act, Act of June 21, P.L. 390, *as amended*, 65 P.S. §§ 66.1—66.4, for access to certain records relating to the settlement of medical malpractice claims. Legal Capital questions whether the CAT Fund lacked just cause when it refused Legal Capital's request to inspect and to copy certain records in the possession of the CAT Fund limited to settlements of malpractice claims through the CAT Fund. The Court affirms the decision of the CAT Fund to deny Legal Capital's request.

The CAT Fund serves as a secondary insurer in medical malpractice cases to pay the excess, up to prescribed limits, over required basic insurance coverage for awards, judgments and settlements in professional liability actions against health care providers. Legal Capital states that under the former version of Section 701(e)(2) of the Health Care Services Malpractice Act (CAT Fund Act), Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. § 1301.701(e)(2), the CAT Fund made payment on or about December 31 of a given year for settlements arrived at by August 31. For settlements arrived at after August 31, the CAT Fund was not required to pay and in practice did not pay until December 31 of the following year, resulting in delays of up to 16 months.

Legal Capital states that it approaches successful plaintiffs and their attorneys and offers to negotiate to purchase the plaintiffs' and/or counsels' rights to payment in the future, at a discount, which can provide money for plaintiffs or counsel who have immediate financial needs. Legal Capital avers also that previously the CAT Fund routinely provided access to the information it requested here.[1] Legal Capital requested the right to inspect and to make copies of documents relating to plaintiffs who have settled malpractice actions. The information it sought was the names and addresses of all plaintiffs who have settled or compromised claims, the names and addresses of their attorneys, the dates the cases settled, the amounts of the settlements and the docket numbers of the cases.

The request specified that Legal Capital did not seek the name or other information relating to any defendant physician, hospital or other health care provider or any pre-litigation information forwarded to the CAT Fund by any basic care insurance carrier or self-insured provider concerning notice that the value of any claim exceeded the basic insurer's coverage. Legal Capital would be satisfied with redacted records. The CAT Fund denied the request, relying principally upon the provisions of Section 702(c) of the CAT Fund Act, 40 P.S. § 1301.702(c), and the "investigation" exception to the definition of "public record" in the Right–to–Know Act.

■ Legal Capital first quotes the definition of "public record" in Section 1(2) of the Right–to–Know Act, 65 P.S. § 66.1(2):

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in in-

---

1. Where a Commonwealth agency denies a request under the Right–to–Know Act, the appeal under Section 4 of the Right–to–Know Act, 65 P.S. § 66.4, is taken directly to this Court. Therefore, the record generally consists simply of the written request and the denial. Although the letters exchanged constitute the record, the Court does not regard factual averments contained in correspondence to be matters established in an adjudicative proceeding. Nevertheless, the Court may rely upon undisputed averments in performing its review. *See Patients of Philadelphia State Hosp. v. Department of Public Welfare*, 53 Pa.Cmwlth. 126, 417 A.2d 805 (1980).

dustrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court. . . .

Legal Capital notes the principle that a broad construction is to be given to the initial determination of whether a document is a public record, to be tempered as an opposing party brings into play the enumerated exceptions. *Travaglia v. Department of Corrections*, 699 A.2d 1317 (Pa.Cmwlth.1997). It contends that the materials it seeks fall within the "minute, order or decision" category of the Section 1(2) definition.

This Court has broadly construed the phrase "decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations" of persons or groups to include "decisions which establish, alter, abolish or deny rights, privileges, immunities or obligations; in short, decisions which affect them." *Lamolinara v. Barger*, 30 Pa.Cmwlth. 307, 311, 373 A.2d 788, 790 (1977). The Court agrees that where the purpose of the CAT Fund is to resolve claims properly filed with it and to make payments pursuant to statute, the decisions of the agency to approve settlements constitute decisions establishing the property rights of persons. Therefore, settlement records are within the general definition of public records unless one or more exceptions apply.

Legal Capital next turns to the effect of Section 702(c) of the CAT Fund Act. As amended in 1976, Section 702(c) formerly provided in part:

The basic coverage insurance carrier or self-insured provider shall promptly notify the director of any case where it reasonably believes that the value of the claim exceeds the basic insurer's coverage or self-insured plan. . . . Such information shall be confidential, notwithstanding the . . . act of June 21, 1957 (P.L. 390, No. 212) referred to as the Right To Know Law.

Section 4 of the Act of November 26, 1996, P.L. 776, amended the second sentence of Section 702(c) so that it now provides: "Such information, including the fund's claim file, shall be confidential, notwithstanding the act of June 21, 1957 (P.L. 390, No. 212) referred to as the Right To Know Law and the act of July 3, 1986 (P.L. 388, No. 84), known as the 'Sunshine Act.' "

Legal Capital notes that in general, statutes are to be construed liberally to give effect to their objects and to promote justice, Section 1928(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(c), and that it is presumed that the General Assembly intends to favor the public interest as against the private interest. Section 1922(5), 1 Pa.C.S. § 1922(5). Exceptions that are expressed in a statute shall be construed to exclude all others. Section 1924, 1 Pa.C.S. § 1924. General words shall be limited by preceding particular words, Section 1903(b), 1 Pa.C.S. § 1903(b), and a particular provision of a statute should be interpreted to control over a general provision of the same or another statute, if conflict is irreconcilable. Section 1933, 1 Pa.C.S. § 1933.

Legal Capital asserts that Section 702(c) deals only with matters relating to an insurer's notification to the CAT Fund that a claim might exceed coverage limits, whereas Section 702(f), 40 P.S. § 1301.702(f), authorizes the director of the CAT Fund to defend, litigate, compromise or settle claims and deals with other matters relating to settlements. It interprets the reference to "claim file" in the language added to Section 702(c) in 1996 to mean only the claim file existing at the time notice is provided, if the specific terms of the preceding sentence control the interpretation.

Legal Capital argues that confidentiality under Section 702(c) is intended to apply only before there has been a settlement. Section 702(f) places no limitation on access to settlement information. Also, it argues that the confidentiality provided for cannot run in favor of plaintiffs, because they have given up their right to confidentiality in medical records by filing lawsuits, as is provided in Section 5929 of the Judicial Code, 42 Pa.C.S. § 5929. To avoid rendering the 1996 amendment mere surplusage, the confidentiality should be construed to run in favor of the insurers or the health care providers covered by the CAT Fund Act. Protection for physicians against public disclosure of claims not

yet adjudicated or settled would explain the Section 702(c) provision for confidentiality, but that rationale does not apply to settlement information.

Finally, Legal Capital relies upon *Anders v. Department of Treasury,* 137 Pa.Cmwlth. 111, 585 A.2d 568 (1991), where an attorney sought access to records relating to many unclaimed or uncashed checks advertised by the Department of Treasury. The Court held that access that did not reveal the source of the funds would protect confidentiality and stated further that the agency must correlate the information sought with a statutory prohibition. In *Aronson v. Department of Labor and Industry,* 693 A.2d 262 (Pa.Cmwlth.1997), the Court, citing *Anders,* ordered disclosure of a list of names and addresses of employers who received a prevailing-wage survey, because the names were not confidential, even though the list was compiled in part from confidential records.

The CAT Fund responds that the purpose of statutory construction is to ascertain and give effect to the intent of the legislature, Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a), and where the language of a statute is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Section 1921(b), 1 Pa.C.S. § 1921(b). In its view the meaning of "claim file" is clear, and it encompasses the entire file that the CAT Fund maintains, including settlement information. Legal Capital's interpretation renders the 1996 amendment as mere surplusage.[2]

■ The Court ultimately agrees with the CAT Fund that the purpose of the amendment to Section 702(c) was to make the entire claim file confidential. First, the statutory confidentiality as to notices from insurers was longstanding. Therefore, the addition of other language must have been intended to expand upon the existing confidentiality. *See Sekel v. Iagenemma,* 170

Pa.Super. 621, 90 A.2d 587 (1952) (change in language of a statute indicates a change in legislative intent). The Court finds sense in the CAT Fund's assertion that when a notice is first received, that notice constitutes the entire file; anything else would have to come later.

Also, the Court agrees that the common meaning of the term "claim file" includes all of the materials relating to a claim in the possession of the agency. The legislature may have added the disputed language to Section 702(c) instead of Section 702(f) so as to protect all materials from disclosure at the earliest time. The fact that Legal Capital seeks only information relating to settlements does not mean that the legislature sought to protect only that material. Finally, the Court disagrees with Legal Capital's argument regarding in whose favor the confidentiality runs. When the legislature expressly excludes certain materials from the definition of public records, that is the end of the matter. In *Anders* the specific information sought could be provided without violating a statutory prohibition; here, it cannot.

■ The CAT Fund also invokes the "investigations" exception from Section 1(2) of the Right–to–Know Act as a separate basis for its denial, noting that when a claim file is opened the CAT Fund then investigates the merits of the claim. The Court disagrees on this point. In *Marvel v. Dalrymple,* 38 Pa. Cmwlth. 67, 75–76, 393 A.2d 494, 498 (1978), the Court stated that a civil service commission's examination papers for applicants for promotion were not an independent investigation "the discovery of which would compromise the performance of an official agency action unrelated to the particular interest which has rendered the requested minute, order or decision a public record in the first place." The Court therefore has long rejected the notion that an agency's routine perfor-

---

2. The CAT Fund also argues that, if any ambiguity is found, the Court should look to the history surrounding the amendment's adoption, which it asserts was a "backlash" from the trial bar and claimants against the CAT Fund for releasing such information. As support for this averment it cites its assertion to this effect in its letter denying Legal Capital's request. This point is disputed by Legal Capital, which quotes the House and Senate Journals to show that nothing to this effect was mentioned in the debates, and the Court shall not accept a mere averment in correspondence as establishing a fact. *See* n1, above.

mance of its duties, if in any sense "investigative," shields its activities from the Right–to–Know Act.

### ORDER

**AND NOW,** this 6th day of November, 1997, the decision of the Medical Professional Liability Catastrophe Loss Fund to deny Legal Capital, LLC, and Charles I. Artz access to its records relating to settlements of legal actions against health care providers is affirmed.

FRIEDMAN J., concurs in the result only.